STATE of Wisconsin, Plaintiff-Respondent,

**v.**

Gerald R. TURNER, Defendant-Appellant.†

Court of Appeals

*No. 83–059–CR. Submitted on briefs June 13, 1983.—*
*Decided August 22, 1983.*

---

† Petition to review pending. This petition was not decided at the time the volume went to press. Its disposition will be reported in a later volume.

For the defendant-appellant the cause was submitted on the briefs of *Shellow, Shellow & Glynn, S.C.,* with *Stephen M. Glynn* and *James A. Walrath* of counsel, of Milwaukee.

For the plaintiff-respondent the cause was submitted on the briefs of *E. Michael McCann,* district attorney, with *Patrick J. Kenney,* assistant district attorney of counsel, of Milwaukee.

Before Wedemeyer, P.J., Decker and Moser, JJ.

MOSER, J. Gerald R. Turner (Turner) appeals from a judgment of conviction and a sentence to confinement entered on November 8, 1982, following a jury verdict of guilty for operating an automobile under the influence of an intoxicant, contrary to sec. 346.63(1), Stats. Pursuant to an order of the Chief Judge dated July 26, 1983, we are deciding this case by a three-judge panel. We affirm.

On September 26, 1981, at approximately 3:55 a.m., city of Milwaukee police officers observed Turner driving north on a southbound one-way street. The officers pursued Turner for two blocks before he stopped. As Turner exited his car, he stumbled backwards. The officers noticed that Turner's speech was slurred, his eyes were glassy and his breath had an odor of alcohol. The officers asked Turner to perform two field sobriety tests. Turner passed a finger-to-nose test, but he failed to walk a straight line. Turner was then arrested and conveyed to the First District Police Station.

At the station, Turner was taken to a breathalyzer room and issued a citation for operating a motor vehicle while under the influence of an intoxicant. The arresting officer then read Turner the "Informing the Accused" form. Turner agreed to take a breathalyzer test and also requested an alternate blood test. Turner was asked where he wanted the blood test performed. Turner left the choice of facilities up to the officer. Turner was then

given the breath test at 4:31 a.m. The result showed that Turner had a blood alcohol level of .16%. The test ampoule was saved by the breathalyzer operator.

Turner was then taken to St. Anthony Hospital. The officers chose this facility because of its proximity to the station. A blood sample was taken from Turner at approximately 6 a.m. The result showed a blood alcohol level of .196%. The blood sample was destroyed one week later, pursuant to the hospital's standard procedure. St. Anthony Hospital was not certified by the Wisconsin State Hygiene Laboratory for testing of blood alcohol levels.

During the course of the trial, the trial court admitted into evidence the results of the breathalyzer test and the blood test over Turner's objections.

On appeal Turner raises the following issues:

(1) whether the trial court erred in admitting evidence of the results of his blood test;
(2) whether the trial court erred in admitting evidence of the results of his breathalyzer test;
(3) whether the trial court erred in finding that he was issued a citation prior to being given a breathalyzer test;
(4) whether the trial court erred in omitting certain portions of his requested jury instructions; and,
(5) whether the jury instructions given by the trial court created an impermissible presumption.

## ADMISSIBILITY OF BLOOD TEST

Turner first argues that the trial court erred in admitting the results of the blood test. We hold that it did not.

This court's standard of review, when reviewing an order denying a motion to suppress evidence, is that the findings of fact, if any, of the trial court will be sus-

tained unless against the great weight and clear preponderance of the evidence. However, this court will independently examine the circumstances of the case to determine whether the constitutional requirement of reasonableness is satisfied.[1] Turner's argument is based on two contentions. First, he contends that the destruction of the blood sample violates his right to confrontation. This would be true if the State had had control and exclusive possession of the blood sample at all material times.[2] However, it is clear from the record that, short of a court order, St. Anthony was not willing to turn over the blood sample to the police. There was no State action involved in destroying the blood sample; therefore, there was no violation of Turner's right to due process of law.[3]

Turner's second contention is that the blood test was invalid under sec. 343.305(10), Stats. This section requires that blood analyses be performed by an individual possessing a valid permit to perform the analysis and according to methods approved by the laboratory of hygiene.

This section is clearly intended to protect defendants who are given blood tests under the direction of the police. When a defendant requests an alternate test, as Turner did, sec. 343.305(5), Stats., is applicable. This section requires only that "any qualified person" administer the blood test. This standard permits a defendant to procure an independent test, free from the stricter requirements imposed upon the State. If this

---

[1] *State v. Callaway,* 106 Wis. 2d 503, 511, 317 N.W.2d 428, 433 (1982).

[2] *See State v. Booth,* 98 Wis. 2d 20, 24, 295 N.W.2d 194, 197 (Ct. App. 1980). *See also* sec. 971.23(1), Stats.

[3] U.S. Const. amend. XIV, § 1; Wis. Const. art. I, § 7.

court adopted Turner's interpretation of subsection (10) it would, in effect, arbitrarily limit a defendant's choice in choosing an alternate test and facility which is his right under subsection (5). Generally, an attack on the qualifications of the operator, the qualifications of a facility, the methods of operation or the accuracy of the equipment is a matter of defense and goes to the weight to be accorded to the test and not to the test's admissibility.[4] Accordingly, we hold that the trial court's findings regarding the suppression of the blood test results are not contrary to the great weight and clear preponderance of the evidence. We are also satisfied, after an independent review of the record, that Turner's constitutional rights to both confrontation and due process of law have not been violated by admitting the results of the blood test into evidence.

## ADMISSIBILITY OF BREATHALYZER TEST

In regard to the breathalyzer test, Turner initially argues that the trial court erred in admitting the results of the breathalyzer test when he requested but did not receive a proper alternate test. We have already determined that Turner's blood test was a proper and valid test according to sec. 343.305(5), Stats. Regardless of whether an alternate test was requested by Turner, the breathalyzer test given here was entitled to a *prima facie* presumption of accuracy which was sufficient to establish Turner's blood alcohol level.[5]

---

[4] *City of New Berlin v. Wertz,* 105 Wis. 2d 670, 675 n. 6, 314 N.W.2d 911, 913 n 6 (Ct. App. 1981).

[5] *See State v. Neitzel,* 95 Wis. 2d 191, 203, 289 N.W.2d 828, 834–35 (1980).

## ISSUANCE OF CITATION

Turner next argues that the trial court erred in finding that the police officer issued a citation to Turner prior to administering a breathalyzer test. Section 343.-305(2)(b), Stats., states that "[a] law enforcement officer may, upon arrest of and issuance of a citation . . . request the person to provide samples of his . . . breath, blood or urine . . . ." It is well established that before a law enforcement officer can request a driver to submit to any test to determine blood alcohol level he must: (1) arrest the driver; and (2) issue a citation for violation of sec. 346.63(1).[6]

There is no dispute as to Turner's arrest. However, at a pretrial hearing the arresting officer testified that he issued Turner a citation prior to having the breathalyzer test administered. Turner, on the other hand, testified that he was issued the citation only after the breathalyzer test was administered. The record indicates that Turner had ample opportunity to refute the officer's testimony before the trial court. The trial court found the officer's testimony credible and Turner's testimony incredible.

A trial court's findings will not be disturbed on appeal unless the findings are contrary to the great weight and clear preponderance of the evidence.[7] When required to make a finding of fact, the trial court determines the credibility of the witnesses and the weight to be given to their testimony and its determination will not be disturbed by this court on appeal where more than one inference may be drawn from the evidence.[8] After re-

[6] *See id.* at 193, 289 N.W.2d at 830.

[7] *Wurtz v. Fleischman,* 97 Wis. 2d 100, 107, 293 N.W.2d 155, 159 (1980).

[8] *In re Estate of Dejmal,* 95 Wis. 2d 141, 151, 289 N.W.2d 813, 818 (1980).

viewing the record, this court determines that there is abundant credible evidence to support the trial court's finding. The trial court's finding was not against the great weight and clear preponderance of the evidence.

## JURY INSTRUCTIONS

Turner argues that the trial court violated his fourteenth amendment right to due process when it omitted certain words from a requested instruction. We disagree.

Turner contends that the trial court erred by eliminating three words from Wis JI—Criminal 2663. This instruction reads: "It is not required that impaired ability to operate be demonstrated by particular acts of unsafe driving. What is required is that the person's ability to safely control his vehicle be materially, that is substantially, impaired." [Emphasis added.] The trial court refused to read the three underlined words.

We note at the outset that a trial court may exercise wide discretion in issuing jury instructions based on the facts and circumstances of the case. This discretion extends to both choice of language and emphasis.[9] A trial court should exercise discretion in order to fully and fairly inform the jury of the rules of law applicable to the case and to assist the jury in making a reasonable analysis of the evidence. Furthermore, ultimate resolution of the issue of the appropriateness of giving a particular instruction turns on a case-by-case review of the evidence, with each case necessarily standing on its own factual ground.[10]

It is a well-established proposition that a single instruction to a jury may not be judged in artificial iso-

[9] *State v. Vick*, 104 Wis. 2d 678, 690, 312 N.W.2d 489, 495 (1981).
[10] *Id.* at 690–91, 312 N.W.2d at 495.

lation. In assessing whether an alleged erroneous jury instruction has reached the magnitude of constitutional error, the inquiry is not whether the instruction is undesirable, erroneous, or even universally condemned, but rather the question is whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.[11] Even if we were to view the challenged jury instruction as undesirable, this court does not view the jury instruction in totality as rendering Turner's conviction constitutionally invalid.[12] Accordingly, we hold that the omission of "that is substantially" did not prejudice Turner.

## PERMISSIBLE INFERENCE

Finally, Turner argues that the trial court's instruction suggested that a .10% blood alcohol level at the time of testing was the same as a .10% blood alcohol level at the time of driving. Turner claims this is an irrational and unconstitutional presumption. We disagree.

The trial court instructed the jury twice—once in regard to the breathalyzer test and again in regard to the blood test, using identical language:

If you are satisfied beyond a reasonable doubt that the chemical analysis showed there was 0.10 percent or more by weight of alcohol in the defendant's blood *at the time* of driving, you *may* find from that fact alone that the defendant was under the influence of an intoxicant; but you must not so find unless you are so satisfied beyond a reasonable doubt upon consideration of all the evidence in the case. [Emphasis added.]

One sentence after this instruction was given for the second time, the trial court also instructed the jury that

[11] *Id.* at 691, 312 N.W.2d at 495–96.
[12] *Id.* at 692, 312 N.W.2d at 496.

they: "*may* consider the evidence regarding the analysis of the blood sample and the evidence of how blood absorbs and eliminates alcohol along with all other evidence in the case giving it just such weight as you determine it is entitled to receive." [Emphasis added.]

These instructions create a permissive inference. A permissive inference allows, but does not require, the trier of fact to find an element of the crime upon proof by the prosecution of another fact, and it places no burden of any kind on Turner.[13] A permissive inference leaves the trier of fact free to credit or reject the inference and does not shift the burden of proof nor does it violate due process of law.[14]

In determining whether there is a rational connection between the basic fact that the prosecution proved and the ultimate fact inferred, the test is whether the ultimate fact inferred is more likely than not to flow from the basic fact proved.[15] The issue Turner presents is whether the inferred fact that he was under the influence of an intoxicant at the time of driving, more likely than not, flows from the proven fact of intoxication at the time of testing. The trial court was satisfied, from the evidence before it, that this test was met. Accordingly, we conclude that the trial court did not abuse its discretion in employing the jury instruction.[16] The language is clearly permissive and does not create an unconstitutional presumption.

*By the Court.*—Judgment affirmed.

---

[13] *Id.* at 693, 312 N.W.2d at 496.

[14] *Id.* at 693, 312 N.W.2d at 496–97.

[15] *County Court v. Allen*, 442 U.S. 140, 165 (1979).

[16] *See Vick, supra* note 9, at 695, 312 N.W.2d at 498.