STATE of Wisconsin, Plaintiff-Respondent,

v.

Charles Edward BOYKINS, Defendant-Appellant.†

Court of Appeals

No. 83–1730–CR. Submitted on briefs March 14, 1984.—
Decided April 16, 1984.
(Also reported in 350 N.W.2d 710.)

† Petition to review denied.

For the defendant-appellant the cause was submitted on the briefs of *Mark Lukoff,* first assistant state public defender, of Milwaukee.

For the plaintiff-respondent the cause was submitted on the briefs of *Bronson C. La Follette,* attorney general,

with *Kirbie Knutson,* assistant attorney general, of counsel, of Madison.

Before Wedemeyer, P.J., Decker and Moser, JJ.

MOSER, J.   Charles Edward Boykins (Boykins) appeals from a judgment convicting him of attempted murder in violation of secs. 940.01(1) and 939.32(1)(a), Stats., and from an order denying his motion for postconviction relief.  Boykins raises four issues on appeal: (1) whether he was denied his constitutional rights to present a defense and call witnesses in his own behalf when the court precluded him from testifying as to specific acts of violence toward him by the victim and precluded defense witnesses from testifying about the victim's reputation for being a violent man; (2) whether Boykins was denied his constitutional right to assistance of counsel when he was penalized for speaking with his attorney while en route to an in-chambers conference by being forbidden to testify about the victim's previous acts of violence toward him; (3) whether the trial court erred in refusing to instruct the jury on endangering safety by conduct regardless of life; and (4) whether Boykins was denied due process of law when the trial court commented to the jury that a defense witness might have violated a sequestration order without specifically finding that such a violation had, in fact, occurred and that the witness' testimony was substantially affected by the violation.  Because Boykins was denied his constitutional right to present a defense and call witnesses in his own behalf when the trial court precluded him from testifying about specific violent acts by the victim towards Boykins and precluded defense witnesses from testifying concerning the victim's reputation as a violent man, we reverse the judgment of conviction and order denying postconviction relief and remand for a new trial.

On the night of December 23 and in the early morning hours of December 24, 1982, at the Chez 21 tavern in Milwaukee, Boykins got into an argument with Samuel Brown (Brown) concerning a woman, LaRossa Bowers, who was the present girlfriend of Brown and the former girlfriend of Boykins. Brown and Boykins continued their argument out-of-doors where Boykins shot Brown.

The state's version of what happened is that, as Brown exited the Chez 21, Boykins pulled a .38 pistol from his waistband, fired a shot which hit Brown in the left elbow while Brown's back was toward Boykins, fired a second shot which did not hit Brown, fired a third shot hitting Brown in the neck and sending him to the ground, fired fourth and fifth shots which did not hit Brown, and fired a sixth shot which struck Brown in the small of the back, resulting in his paralysis and confinement to a wheelchair.

Boykins' version of the event is that Brown was the aggressor in the argument and challenged Boykins to settle the matter outside. Boykins claims he declined but that, because his girlfriend, Mona Walls, wished to go home, they left the tavern right after Brown. When they got outside, Brown was screaming, spitting at Boykins' car, and stomping on the car with his shoe. According to Boykins, Brown lunged at Boykins, reached behind his back for a gun and said he was going to shoot. It was then, according to Boykins, that Boykins pulled out his own gun and fired several shots in a panic, not intending to kill Brown, but only to defend himself. Boykins then took Brown's gun and fled the scene. Testimony was adduced at trial corroborating Boykins' contention that Brown had a gun and threatened to shoot Boykins.

At trial, the court refused to allow defense witnesses Marion Allison, Marilyn Walker, and Tammy Brown to testify as to their opinions about the victim Brown's

reputation for being a peaceable and law-abiding man. According to the offer of proof, Tammy Brown would have testified that she had known Sam Brown for about six years, that she was familiar with his reputation for peaceableness and being law-abiding and that she had heard numerous people say he was a fighter and a gambler. Marion Allison, if allowed to, would have testified that she had known Sam Brown for about seven years, was familiar with his reputation for peaceableness and had heard from numerous people that he carried a gun and was not a peaceable man. Marilyn Walker, if allowed to, would have testified that she had heard numerous people talk about Sam Brown while she resided at Westlawn between 1978 and 1981, that people said they did not like to be around Brown because he always wanted to fight and that Brown had a reputation for getting angry at the slightest provocation. Marion Allison and Marilyn Walker were permitted to testify that in September of 1982 Brown told them he was going to kill Boykins.

Boykins took the stand on his own behalf and was asked by his counsel about previous encounters he had had with Brown in which Brown exhibited violence toward him. Boykins testified that in 1982 he had been attacked bodily by Brown at the Interns tavern and that Brown had pulled a gun on him at a bar called Cal's. Boykins could not remember in what month(s) of 1982 these encounters took place. Boykins was next asked whether there were any other such encounters, and he began to testify about an event that took place in the "spring" of 1982. The state objected to the testimony on the grounds of "remoteness," and the court sustained the objection. Boykins then proceeded to testify about another violent encounter "three weeks later" which the state also objected to on grounds that the event was remote and, thus, irrelevant. Boykins' counsel requested

to be allowed to make an offer of proof whereupon the parties proceeded to the judge's chambers. Once in chambers, the prosecuting attorney asked to have the record reflect that Boykins' counsel was conferring with Boykins, who was at that point still a witness on the stand as the court was not in recess. Boykins' counsel was allowed to make his offer of proof as to an incident of violence by Brown toward Boykins in the "summer" of 1982. Again, the trial court refused to allow the testimony, citing Boykins' vagueness as to when the event occurred.

The jury was instructed on attempted murder and self-defense, and it returned a verdict finding Boykins guilty of attempted murder. Boykins moved for a new trial on the same grounds as those raised here. The trial court denied the motion.

Boykins claims he was denied his basic constitutional right to present a defense and call witnesses in his own behalf when the trial court excluded his testimony concerning specific violent acts by Brown toward him and excluded the testimony of defense witnesses concerning Brown's reputation for being a violent person. This court agrees.

When self-defense is raised in a prosecution for assault or homicide and there is a factual basis to support such a defense, the defendant may establish what the defendant believed to be the violent character of the victim by proving prior specific instances of violent conduct by the victim within the defendant's knowledge at the time of the incident.[1] The admission of such evidence rests within the sound exercise of discretion by the trial court.[2] Here, the trial court excluded evidence of prior

---

[1] *McMorris v. State*, 58 Wis. 2d 144, 152, 205 N.W.2d 559, 563 (1973). *See also* secs. 904.04(1)(b) and 904.05(2), Stats.

[2] *McMorris, id.*

violent acts, all of which had occurred in the same year as the alleged attempted murder, on the ground of remoteness. In *Hough v. State* the supreme court held that the lapse of one year did not make prior act evidence so remote as to negate its evidentiary value.[3] In *Sanford v. State* the supreme court agreed with a trial court ruling that evidence of a prior act which took place one and one-half years earlier in time was not so remote in time as to render it without probative value.[4] The element of "uniqueness" of the circumstantial evidence in connection with irrelevance because of remoteness referred to in *Hough* and *Sanford* has never been required to admit evidence of the peaceableness of the victim because such evidence is specifically permissible, if relevant, under sec. 904.04(1), Stats. The element of "uniqueness" has only been utilized in sec. 904.04(2) because that section more broadly permits general character evidence for specified circumstantial proof.

We conclude, in the instant case, that a lapse of time of less than one year was not so great as to negative all rational connection between the victim's alleged threat to Boykins' life on the night of the shooting and evidence of his prior violent conduct toward Boykins.[5] The trial court abused its discretion in excluding Boykins' testimony on the ground of remoteness.

The trial court further impinged on Boykins' attempt to establish the victim Brown's violent character when it excluded reputation evidence in the form of opinions by three witnesses as to Brown's reputation for violence. The state objected to the proffered testimony on the ground of relevance, and the court sustained the objec-

[3] 70 Wis. 2d 807, 814–15, 235 N.W.2d 534, 538 (1975).
[4] 76 Wis. 2d 72, 82, 250 N.W.2d 348, 352 (1977).
[5] *See id.* at 81, 250 N.W.2d at 352.

tions. Where there is a sufficient factual basis to raise the issue of self-defense, and the violent character of the victim is an essential element of the defense, proof of the victim's reputation for being violent is relevant and admissible.[6] The trial court abused its discretion in excluding such evidence.

The exclusion of the above reputation evidence, as well as of Boykins' aforementioned testimony regarding his personal knowledge of the victim's prior violent conduct, was not only an abuse of discretion but was also error of a constitutional dimension. A fundamental element of due process of law is the accused's right to present the testimony of witnesses in his or her own defense.[7] The accused also has a constitutional right to testify in his or her own behalf.[8] In cutting off Boykins' own testimony concerning prior violent confrontations with the victim and in refusing to permit three defense witnesses to give reputation testimony concerning the victim, the trial court prevented Boykins from fully presenting his case as to the reasonableness of the actions he claimed to have taken in self-defense. Thus, Boykins' constitutional rights to present a defense and to testify in his own behalf were infringed upon.

Before a constitutional error can be held harmless, a reviewing court must be able to declare a belief that it was harmless beyond a reasonable doubt.[9] Because the jury was denied the opportunity to evaluate Boykins' asserted defense in light of all relevant evidence, we are

[6] See McMorris, supra note 1, at 149–50, 205 N.W.2d at 562. See also secs. 904.04(1)(b) and 904.05(1), Stats.

[7] See U.S. Const. amends. VI and XIV; Wis. Const. art. 1, § 7; Chambers v. Mississippi, 410 U.S. 284, 302 (1973); Washington v. Texas, 388 U.S. 14, 19 (1967).

[8] Alicea v. Gagnon, 675 F.2d 913, 923 (7th Cir. 1982).

[9] Chapman v. California, 386 U.S. 18, 24 (1967); State v. Zellmer, 100 Wis. 2d 136, 150, 301 N.W.2d 209, 216 (1981).

unable to say that the jury's verdict was unaffected by the errors. Therefore, we must reverse Boykins' conviction and remand the case to the circuit court for a new trial.

Because we are reversing Boykins' conviction and ordering a new trial based on the improper exclusion of testimony, we find it unnecessary to reach the other claimed errors.

*By the Court.*—Judgment and order reversed and cause remanded for new trial.