STATE of Wisconsin, Plaintiff-Respondent,

v.

Debra Ann HEAD, Defendant-Appellant.†

Court of Appeals

*No. 99–3071–CR. Submitted on briefs July 20, 2000.—Decided November 16, 2000.*

## 2000 WI App 275

(Also reported in 622 N.W.2d 9.)

†Petition to review granted.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *John D. Hyland* and *Marcus J. Berghahn* of *Hurley, Burish & Milliken, S.C.,* Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Christopher G. Wren,* assistant attorney general, and *James E. Doyle,* attorney general.

Before Vergeront, Roggensack and Deininger, JJ.

¶ 1.  DEININGER, J.   Debra Ann Head appeals a judgment convicting her of first-degree intentional homicide. She claims the trial court erred in (1) refusing to allow testimony regarding the victim's prior specific violent acts, (2) declining to instruct the jury on self-defense and mitigation, and (3) depriving her of her constitutional right to testify on her own behalf and confront the evidence against her. We are not persuaded that the trial court erred in any of these regards, and accordingly, we affirm.

## BACKGROUND

¶ 2.  Debra was arrested and tried for fatally shooting her husband, Harold Head. Debra testified that about four months prior to the murder, Harold became angry when he found out that their older daughter was pregnant. He stormed into his bedroom and came out with two pistols, saying that he was going to look for the alleged father to shoot him. Over the next four months, her husband's threats against the alleged father continued, but Harold did not include

Debra as a target of the threats. Harold said such things as: "Given the right opportunity, if I ever come across [the alleged father], he's dead; they'll pick him up in a body bag."[1]

¶ 3. Debra testified that on the morning of the shooting, she woke Harold to discuss financial issues. She asked if he was mad, to which he responded, "What do you think?" They discussed and resolved some financial matters. At that point, Harold was lying on the bed and she was next to the bed at his feet. Debra then changed the topic of conversation to their pregnant daughter, which, according to Debra, "lit that fuse" in Harold. He responded with a stream of epithets directed against the alleged father and said that he was "so sick of him." He also blamed Debra for their daughter's becoming pregnant. When Debra asked Harold to reason with her about "the kids," she testified that he replied, "I'm so sick of hearing about this. . . . Maybe I should just take care of you guys and just get on with my life."

¶ 4. Debra interpreted Harold's statement that he would "take care of you guys" to mean he would do bodily harm to her. She described what happened next as follows: "And with that he whipped the covers aside and rolled across with his fist . . . like he was going to reach for something, and that's when I reached for the gun . . ." which was on his side of the bed on the floor. Debra testified that she then stepped back a couple of steps and told Harold, "[y]ou're wrong about this situation, you're wrong." She held the gun up and pointed it

---

[1] Debra's testimony regarding statements Harold had made in reference to the alleged father included his use of numerous epithets. Inasmuch as Harold's exact words, as related by Debra, are not critical to our analysis, we have paraphrased the statements she attributed to him.

at Harold. Her testimony at trial regarding what happened next is as follows:

Q    What did he [Harold] do [after you got the gun]?

A    He just sat there at first realizing that—that I had—had the gun, and—

Q    How did he look?

A    I don't really remember. Terrified.

Q    What was his emotional state?

A    He was—He knew I was in control. He was terrified.

¶ 5.    Debra claimed that she thought her husband would try to take the gun away from her and kill her. Debra fired the gun when he made a "roll to sit up move." Debra testified that about six feet separated her from her husband when he made the move to sit up. According to her testimony, "he had fists; just sat up more in the bed and made that move like he was—I knew he was coming after me, so I fired the shot not aiming the gun anywhere just to stop him, and he flew back in the bed . . . ." After the first shot, Harold "made another move like he was going to get up . . . toward [Debra]," and she fired a second shot. When the police arrived, Harold's left leg was still on the bed under the covers, and his right leg was hanging off of the bed.

¶ 6.    Prior to her jury trial on the charge of first-degree intentional homicide, Debra filed a motion in limine to admit character evidence about her husband, to admit evidence regarding prior specific violent episodes involving her husband, and to permit her to

168

discuss this testimony in her opening statement.[2] The trial court ruled that Debra could discuss her self-defense theory in her opening statement and, with one exception, describe expected testimony in support of it.[3] The court warned Debra, however, that it would wait until hearing the evidence before determining whether there was a factual basis for self-defense, and any discussion by her counsel in opening statements of her theory of self-defense and the victim's prior acts would thus be at her own risk. Subsequently, the court concluded that the evidence presented at trial, including Debra's testimony regarding what transpired immediately prior to the shooting, was insufficient to establish self-defense. As a result, the court refused to admit testimony regarding the victim's character and prior specific violent acts, and it denied Debra's request for jury instructions on self-defense and mitigation.

¶ 7.   The jury found Debra guilty, and she appeals the judgment convicting her of first-degree intentional homicide.

## ANALYSIS

¶ 8.   The basic question which underlies all of the issues Debra raises on appeal is whether there was a sufficient factual basis for Debra's theory of self-defense to permit her, first, to introduce evidence of Harold's prior violent acts, and then to have the jury instructed on either "perfect" or "imperfect" self-defense, or both. The trial court concluded that Debra

---

[2] Debra testified in an offer of proof that at various times during their twenty-one-year marriage, Harold had committed various acts of physical violence directed toward her and others.

[3] The trial court concluded that testimony regarding one alleged incident would definitely not be permitted at trial because the incident was too remote in time to be relevant.

had not established a factual basis for self-defense. Although the analysis we apply varies slightly in the separate inquiries, we conclude that the trial court did not err in concluding that Debra should not be permitted to introduce so-called *McMorris* evidence,[4] or in declining to instruct the jury on self-defense and mitigation.

¶ 9.  In order to establish the absolute privilege of self-defense which could result in her acquittal ("perfect self-defense"), Debra needed to show that: (1) she reasonably believed that she was preventing or terminating an unlawful interference with her person; (2) she reasonably believed that force or the threat thereof was necessary to prevent or terminate the interference; and (3) she reasonably believed that the actual amount of force used was necessary to prevent or terminate the interference. WIS. STAT. § 939.48(1) (1997–98);[5] *State v. Camacho*, 176 Wis. 2d 860, 869, 501 N.W.2d 380 (1993). The supreme court held in *McMorris v. State*, 58 Wis. 2d 144, 205 N.W.2d 559 (1973), that "[w]hen the issue of self-defense is raised in a prosecution for assault or homicide *and there is a factual basis to support such defense*, the defendant may, in support of the defense, establish what the defendant believed to be the turbulent and violent character of the victim by proving prior specific instances of violence within his knowledge at the time of the incident." *Id.* at 152 (emphasis added). Whether to admit such evidence "rests in the exercise of sound and reasonable discretion by the trial court." *Id.*

---

[4] See *McMorris v. State*, 58 Wis. 2d 144, 205 N.W.2d 559 (1973), which we discuss below.

[5] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

¶ 10.  The supreme court cautioned in *McMorris* that "[i]n those instances in which the defendant failed to establish a factual basis to raise the issue of self-defense, prior specific acts of violence by the victim would have no probative value." *Id.* at 152.[6] The court did not further elucidate the threshold showing required of a defendant in order to introduce evidence of a victim's reputation and prior violent acts.[7] Subsequently, however, in *Bedford v. State*, 65 Wis. 2d 357, 222 N.W.2d 658 (1974), the court affirmed a trial court's exclusion of a defendant's proffered testimony regarding a victim's prior acts of violence. It noted that the "only basis for the defendant's claim of self-defense is the defendant's own testimony," and even that testi-

[6] Generally, evidence of other crimes, wrongs, or acts is inadmissible to prove a person's character or to show that he acted in conformity therewith. WIS. STAT. § 904.04(2). Evidence of specific violent conduct by a homicide victim is not admissible to support an inference about the victim's actual conduct during the incident which resulted in death, but only to show the accused's state of mind about the danger the victim posed. *Werner v. State*, 66 Wis. 2d 736, 743, 226 N.W.2d 402 (1975). Such evidence helps the jury determine whether the defendant "acted as a reasonably prudent person would under similar beliefs and circumstances" in the exercise of a privilege of self-defense. *McMorris*, 58 Wis. 2d at 151.

[7] The supreme court noted in *McMorris* that it was "undisputed that the defendant adduced at trial sufficient evidence to raise the issue of self-defense. The trial court so instructed the jury." *McMorris*, 58 Wis. 2d at 146 (footnotes omitted). This passage, and the court's citation of *Thomas v. State*, 53 Wis. 2d 483, 192 N.W.2d 864 (1972) in a footnote, implies that whether to admit evidence of a defendant's knowledge of prior acts of violence on the part of the victim should be decided on the same standard as that applied when determining whether the jury may be instructed on the issue of self-defense.

mony indicated "that the victim was the only one in the position of a self-defender." *Id.* at 361–62. The court also found it significant that, "[f]rom the defendant's own testimony it is established that defendant could have withdrawn from the scene prior to the fatal stabbing but chose not to do so." *Id.* at 362. Thus, the court concluded:

> Under the circumstances, we are of the opinion that the testimony failed to provide the "sufficient factual basis" required by *McMorris* as a prerequisite to the admission of testimony regarding the defendant's personal knowledge of prior specific instances of violence on the part of the victim. Therefore, the trial court was correct in excluding such testimony.

*Id.*[8]

¶ 11. Here, the trial court came to a similar conclusion. In its ruling denying Debra the opportunity to admit testimony regarding Harold's reputation and past violent acts, the court cited the requirement in *McMorris* that a factual basis for self-defense must be present before such evidence may be admitted. It also noted, correctly, that the elements of both "perfect self-defense" and "imperfect self-defense" (mitigation) have

[8] We note that, even though the trial court in *Bedford* excluded *McMorris* evidence, it did instruct the jury on self-defense, " 'because there was some testimony by the defendant, and frankly, the court thought it was leaning over when it ruled in favor of the defendant by including it.' " *Bedford v. State*, 65 Wis. 2d 357, 363, 222 N.W.2d 658 (1974). Be that as it may, the supreme court affirmed the trial court's refusal to instruct the jury on the lesser included offense of manslaughter after determining that the record did not "make[ ] reasonable a conclusion that the defendant here killed believing his act was necessary in self-defense." *Id.* at 364.

objective as well as subjective components. The court then reviewed the fact patterns in a number of cases in which appellate courts have concluded that a factual basis for self-defense had been established, and it reviewed in detail Debra's testimony during her offer of proof regarding the events and circumstances on the morning of the shooting. The court concluded:

> [T]here was not a weapon in Mr. Head's hand [and] he was not making a specific threat to Miss Head that I'm going to get you. I'm going to kill you. There is no testimony from Miss Head that Mr. Head made a move to go down to all these weapons that were at the foot of the bed that we heard about, but that he made a move to come after her and that move was simply throwing the covers back. Bottom line is it was a threat not accompanied by any use of weapons at that time, not accompanied by any violence at that time.

¶ 12.  It is not clear from these comments whether the trial court determined that Debra had not established that she actually believed that, when she shot Harold, she was preventing or terminating an unlawful interference with her person, or whether the court concluded that even if Debra so believed, the belief could not be deemed an objectively reasonable one under the circumstances.[9] If she failed to establish

[9] At a later point in the trial, when considering Debra's proposed self-defense and mitigation instructions, the court indicated: "Clearly the court feels that subjectively she's met whatever she would need to meet, but I don't believe she's met the objective half of that equation." We take this to mean that the court acknowledged that Debra testified that she believed Harold's statements and actions just prior to the shooting constituted an unlawful interference with her person which she needed to prevent or terminate.

173

either the subjective (actual belief) or objective (reasonableness of the belief) component, however, she failed to provide "a factual basis to support" self-defense. *See McMorris*, 58 Wis. 2d at 152. We conclude that the trial court did not erroneously exercise its discretion in ruling that the requirements for admitting other acts and reputation evidence relating to the victim had not been met. The trial court applied the correct law to the relevant facts, and through a well-articulated rational process, reached a conclusion which a reasonable judge could reach. *See Loy v. Bunderson*, 107 Wis. 2d 400, 414–15, 320 N.W.2d 175 (1982). We do not deem it fatal to the trial court's evidentiary ruling that it did not articulate the precise deficiency in Debra's showing. *See, e.g., Bedford v. State*, 65 Wis. 2d 357, 222 N.W.2d 658 (1974).

¶ 13.  As in *Bedford*, the only basis for Debra's claim of self-defense was her own uncorroborated testimony, and that testimony does not support her claim that she reasonably believed that she was acting in self-defense when she shot Harold. She did not testify that her husband made a direct verbal threat against her, or that he engaged in any overtly violent acts or gestures, in the moments leading up to the shooting. Her testimony that she could not leave the bedroom was undermined by her statements that she was six feet from her husband, that he was lying down on the bed, and that she had a gun trained on him for several moments before she shot him.

¶ 14.  Based on Debra's own testimony, she was "in control" of the situation. It is undisputed that Harold did not have a weapon when he was shot. We agree with the State that, even if Debra could be said to have been acting in self-defense when she preemptively

174

picked up the gun, it is much harder to accept that she was acting in self-defense when she subsequently fired it. Although the potential for an unlawful interference may have once existed, it was no longer actual or imminent when she fired. We therefore conclude that the trial court did not err in determining that Debra had not established a sufficient factual basis that, in shooting Harold, she reasonably believed she was acting to prevent or terminate an unlawful interference with her person. *Cf. Shawn B.N. v. State*, 173 Wis. 2d 343, 369–70, 497 N.W.2d 141 (Ct. App. 1992) (a trial court must apply the objective "reasonable view of the evidence" test in deciding whether a mitigational defense should be submitted to the jury).

¶ 15.   Debra argues, however, that "the presentation of subjective testimony by an accused, going to a belief that she had to take steps in self-defense, ought be all that is required for the admission of self-defense evidence,"[10] and that *Bedford* actually supports this

---

[10] The dissent's analysis appears to tacitly accept this argument. In the dissent's view, once a defendant who previously suffered violence at the hands of the victim testifies that she believed the victim was going to harm her, she must be allowed to testify to the defendant's past violent acts in order that the jury may evaluate the reasonableness of her belief. In support, the dissent borrows from cases which discuss the defense of provocation. *See State v. Felton*, 110 Wis. 2d 485, 329 N.W.2d 161 (1983); and *State v. Hoyt*, 21 Wis. 2d 284, 128 N.W.2d 645 (1964). Debra's arguments to this court, however, rely exclusively on the *McMorris* standard for determining the admissibility of evidence of Harold's past violent conduct toward both herself and others. She asserts in her brief that "[t]he discussion in *Felton* had no application to the present case as *Felton* involved the defense of provocation, not self-defense." The State agrees that *Felton* "applies only tangentially, if at all,

view. We disagree. Contrary to Debra's assertion, the supreme court in *Bedford* did not imply that it was affirming the trial court's exclusion of *McMorris* evidence only because the defendant had failed to establish the subjective component of self-defense. The court in *Bedford* simply reviewed the facts of record, with particular emphasis on the defendant's own testimony, and concluded the *McMorris* standard of a "sufficient factual basis" had not been met. Moreover, we are not convinced that a trial court is precluded from evaluating the objective reasonableness of a proffered belief when conducting the necessary inquiry, and in fact, conclude that it must do so. We thus reject Debra's attempt to distinguish *Bedford*, and we conclude that its holding supports rather than undermines the trial court's evidentiary ruling in this case.

¶ 16.    Debra also argues that the trial court committed an error of law by divining a "rule" from prior appellate decisions that, in order to establish a factual basis for self-defense, a defendant must show that there was "simultaneous violence or imminent threats of harm with a weapon in the hand of the victim." We agree with Debra that the trial court did note that "all of the relevant case law" it had consulted contained one of these two circumstances. We will also assume, without deciding, that a factual basis for self-defense may be established with neither "simultaneous violence or imminent threats of harm with a weapon in the hand of the victim" being present. We reject, however, Debra's claim that the trial court committed an error of law in its evidentiary ruling. We read the trial court's

to this issue." We thus confine our discussion to the application of the *McMorris* standard and the law of self-defense, as the parties have argued the case, and we do not attempt to develop an alternative analysis as does the dissent.

remarks as simply finding it significant that the present record lacks any evidence of either of two circumstances commonly found in cases where a factual basis for self-defense is deemed established.[11]

■

¶ 17. We conclude that the trial court did not commit an error of law by noting the absence of two circumstances under which the privilege of self-defense commonly arises. The court implicitly concluded that no other facts were present that would engender a reasonable belief on Debra's part that she was preventing or terminating an unlawful interference at the time of the shooting. The facts related by Debra in her offer of proof that are most favorable to her claim of self-defense, are these: (1) during the four months prior to the shooting, Harold had made specific threats of violence toward the man who had impregnated his daughter; (2) he became upset when Debra brought up the topic of the daughter's pregnancy on the morning of the shooting ("the fuse had lit"); (3) he made an ambiguous statement that could be interpreted as a threat against Debra on the morning of the shooting ("Maybe I

[11] The cases cited by the trial court include *State v. Boykins*, 119 Wis. 2d 272, 275, 350 N.W.2d 710 (Ct. App. 1984) (witnesses testified that, prior to the defendant shooting the victim, the victim had lunged at the defendant, taken out his gun and threatened to kill the defendant); *State v. Coleman*, 206 Wis. 2d 199, 556 N.W.2d 701 (1996) (defendant heard kicking at door and feared an imminent robbery attempt, which he had experienced previously and which had involved a gun); and *State v. Wenger*, 225 Wis. 2d 495, 593 N.W.2d 467 (Ct. App.), *review denied*, 228 Wis. 2d 168, 599 N.W.2d 409 (Wis. May 25, 1999) (No. 98–1739–CR) (defendant testified that, immediately prior to the shooting, victim had choked him and thrown him against a wall).

should just take—get—take care of you guys and get on with my life."); and (4) he made a "move to sit up" in bed "and come toward" Debra while she was pointing a gun at him. We conclude that the trial court did not err in determining that these facts, unaccompanied by a violent act, overt threat, or possession of a weapon on Harold's part, fail to establish a sufficient factual basis for a claim of self-defense.

¶ 18.   Having concluded that the trial court did not err in excluding Debra's proffered *McMorris* evidence, we turn now to whether it erred in refusing to give the self-defense instructions she requested. A trial court has broad discretion in determining which instructions to give to the jury. *State v. Turner*, 114 Wis. 2d 544, 551, 339 N.W.2d 134 (Ct. App. 1983). The supreme court has explained the inquiry which must be made when a defendant requests a "theory of defense" instruction:

> A defendant is not automatically entitled to a jury instruction on an offered defense. The defendant has the initial burden of producing evidence to establish a statutory defense to criminal liability. . . . The rule generally applied to instructions is "that a trial court is not required to give requested instructions unless the evidence reasonably requires it. However, a defendant in a criminal case, when he properly requests, is entitled to have the jury consider any defense which is supported by the evidence. Ultimate resolution of the issue of the appropriateness of giving [a] particular instruction turns on a case-by-case review of the evidence, with each case necessarily standing on its own factual ground. . . . [W]here the defendant appeals from the denial of a request instruction, 'the evidence is to be

viewed in the most favorable light it will reasonably
admit from the standpoint of the accused.' "

*State v. Stoehr*, 134 Wis. 2d 66, 87, 396 N.W.2d 177
(1986) (citations omitted).

¶ 19. Thus, a trial court is justified in declining to
give a requested instruction in a criminal case if it is
not "reasonably required" by the evidence. *State v. Hil-
leshiem*, 172 Wis. 2d 1, 9–10, 492 N.W.2d 381 (Ct. App.
1992). The test for the sufficiency of evidentiary sup-
port for a requested jury instruction is whether "a
reasonable construction of the evidence will support
the defendant's theory, 'viewed in the most favorable
light it will reasonably admit from the standpoint of
the accused.' " *State v. Coleman*, 206 Wis. 2d 199, 213,
556 N.W.2d 701 (1996) (citation omitted). In determin-
ing whether there is sufficient evidentiary support,
"neither the trial court nor the reviewing court may
weigh the evidence, but instead may only ask whether
a reasonable construction of the evidence, viewed
favorably to the defendant, supports the alleged
defense." *Id.* at 213–14.

¶ 20. As with its ruling on *McMorris* evidence, we
conclude that the trial court did not err in denying
Debra's requests that the jury be instructed on the
absolute defense of self-defense and on "imperfect self-
defense," which would permit the jury to conclude that
she was guilty of second-degree homicide in lieu of
first-degree.[12] The latter also requires a threshold
showing that Debra, at the time of the offense, "pos-

[12] *See* WIS. STAT. § 940.01(2)(b):

(2) MITIGATING CIRCUMSTANCES. The following are affirm-
ative defenses to prosecution under this section which mitigate the
offense to 2nd-degree intentional homicide under s. 940.05:

. . . .

sessed a reasonable belief that [s]he was threatened with an unlawful interference" with her person. *See State v. Camacho,* 176 Wis. 2d 860, 873, 501 N.W.2d 380 (1993). Imperfect self-defense as mitigation differs from the absolute defense in that actual, but unreasonable, beliefs as to the necessity of the use of force or the amount thereof, permits mitigation of the homicide. *Id.*

¶ 21.   Debra concedes that her testimony before the jury regarding the events on the morning of the shooting did not differ materially from that given during her earlier offer of proof. We have reviewed this testimony above in concluding that it did not provide a sufficient factual basis to require the trial court to admit evidence of Harold's prior violent acts. We similarly conclude, that "a reasonable construction of the evidence, viewed favorably to the defendant," *see Coleman,* 206 Wis. 2d at 213–14, does not require that the proffered instructions on either perfect or imperfect self-defense be given. Accordingly, we conclude that the court did not erroneously exercise its discretion in declining to do so.

¶ 22.   Finally, Debra claims that the trial court erred by "infringing on [her] constitutional right to testify in her own behalf, and confront the evidence used against her." At trial, through the testimony and records of police officers who interviewed her following the shooting, the State introduced statements by Debra that Harold had never physically abused her. Debra requested permission from the court to testify that there *had been* physical abuse. The trial court

_____

(b)   Unnecessary defensive force. Death was caused because the actor believed he or she or another was in imminent danger of death or great bodily harm and that the force used was necessary to defend the endangered person, if either belief was unreasonable.

decided that she was seeking to introduce evidence that it had already ruled inadmissible for lack of a factual basis to support a theory of self-defense, and it denied the request. We conclude that the court committed no constitutional error in so ruling.

¶ 23.   In support of her constitutional claim, Debra cites *State v. Boykins*, 119 Wis. 2d 272, 277, 350 N.W.2d 710 (Ct. App. 1984), where we held that the trial court had deprived the defendant of his right to present a defense and call witnesses on his own behalf when it precluded him from presenting his own and other testimony regarding the victim's violent reputation and acts. But in *Boykins*, the defendant had clearly established a factual basis for his claim of self-defense—he and other witnesses testified that the victim lunged at him, had a gun and threatened to shoot the defendant. *Id*. at 275. The trial court evidently agreed that there was a factual basis for self-defense, inasmuch as it instructed the jury on self-defense. It had excluded the proffered testimony on "remoteness" grounds, a determination we found to be erroneous. *Id*. at 276–78.

¶ 24.   Here, however, as we have discussed, a sufficient factual basis for a self-defense claim was lacking, and thus "prior specific acts of violence by the victim would have no probative value." *McMorris,* 58 Wis. 2d at 152. The proffered evidence was therefore irrelevant, and there is no constitutional right to present irrelevant evidence. *State v. Jackson*, 188 Wis. 2d 187, 196, 525 N.W.2d 739 (Ct. App. 1994). We acknowledge that Debra was deprived of the opportunity to rebut or explain the statements she made to police that Harold had verbally but not physically abused her in the past. These statements were also largely irrelevant

given the lack of a viable self-defense claim, but Debra did not object to them at trial, and she does not claim error on appeal stemming from their introduction, except insofar as the court precluded her from refuting them. Accordingly, we conclude the trial court did not err in affirming its prior decision that Debra's proffered testimony regarding her husband's abusive acts was irrelevant and inadmissible.

## CONCLUSION

¶ 25. For the reasons discussed above, we affirm the appealed judgment.

*By the Court.*—Judgment affirmed.

¶ 26. ROGGENSACK, J. *(dissenting)*. This case involves the exclusion of testimony regarding two types of conduct: (1) prior specific threats and acts of violence by Harold (the victim) against Debra (the defendant who attempted to raise self-defense to a charge of first-degree intentional homicide); and (2) prior specific threats and acts of violence by Harold against others. The circuit court and the majority opinion lump both types of testimony together as *McMorris*[1] evidence and utilize neither type of conduct when analyzing whether Debra sufficiently raised the issue of self-defense to have the jury decide it. Because I have concluded they used an erroneous analysis of both the controlling case law relative to the admissibility of specific threats and acts of violence by a victim against a defendant and evidence which is properly within the scope of *McMorris v. State*, 58 Wis. 2d 144, 205 N.W.2d 559 (1973), which prejudiced Debra's right to raise a

---

[1] *McMorris v. State*, 58 Wis. 2d 144, 205 N.W.2d 559 (1973).

defense to the charges against her, I must respectfully dissent.

¶ 27.    Debra was not allowed to present evidence of Harold's specific acts of violence and threats against her. The following are examples of testimony the circuit court excluded:

Q.    When was the first time you remember Mr. Head twisting your arms?

A.    From the mid '80s all the way through.

. . . .

Q.    How frequently would he do this to you?

A.    Weekly.

Q.    What would he do?

A.    [I]f he were to like ask me to do something or . . . say something if I didn't agree he'd walk over and twist my arm or pick me up by my arm and my armpit until I'd give in to him.

Q.    For the record, you were indicating putting his hands underneath your arms pits and lifting you up?

A.    Yes.

Q.    Did that hurt?

A.    Yes, it did.

Q.    Did it make you cry?

A.    Yes, it did.

Q.    Did he ever leave bruises?

A.    Sometimes.

Q.    Is that something that happened throughout your marriage?

A.   Yes.

. . . .

Q.   Were there times that he twisted other parts of your body?

A.   Yes.

Q.   What parts did he twist?

A.   My breasts.

Q.   When did that start?

A.   [A]bout the same timeframe, mid or the late '80s all the way through to the end in '98.

Q.   How would he do that?

A.   Just reach over and grab my breast and twist it until I would cry or haul off and bat his hand away . . .

Additionally, if permitted, she would have explained how one of Harold's attacks sent her to the emergency room:

[W]e were in the house ready to go out into the woods and cut wood. And I don't remember what we were discussing. And he got mad. And he was gonna kick something in the living room. There was a mounted raccoon or a fox that was there and I didn't want him to kick it because I didn't want it to go–fly all over. So I went over to stop him. And when I went over to stop him from kicking it, he picked me up and said, "Don't do that." And he got really mad and . . . threw me, well, when he threw me I went back off the arm of the couch. And I hurt in my lower back and I couldn't get up and so I cried. And then he left the room. And then he came back and I was still laying there. And he said, well, can't hurt that bad. Why don't you get up? And then I started to cry

184

and I told him I couldn't. So he said, well, I suppose we should go and get it checked out. And he said, "Now I suppose you're gonna tell everybody what I did." And I said, "No, I won't. We'll just make up a story and tell 'em that I fell out in the woods." And so that's what I had told the people at the emergency room . . . .

And finally, Harold's repeated threats to kill Debra were also excluded, as were his prior specific acts of violence against others.

## Standard of Review.

¶ 28.   The exclusion or admission of evidence is a discretionary decision of the circuit court. *State v. Edmunds*, 229 Wis. 2d 67, 74, 598 N.W.2d 290, 294 (Ct. App. 1999). However, because the test for whether a defendant reasonably believed that she was preventing an unlawful interference with her person contains an objective component, we review whether evidence is sufficient to support that component *de novo*. *Shawn B.N. v. State*, 173 Wis. 2d 343, 370, 497 N.W.2d 141, 151 (Ct. App. 1992).

## Self-defense.

¶ 29.   Self-defense may be an available defense for a defendant who is charged with first-degree intentional homicide when some overt act of possible aggression on the part of the victim occurred immediately before the defendant's act. WIS. STAT. § 939.48 (1997–98);[2] *State v. Mendoza*, 80 Wis. 2d 122, 156, 258 N.W.2d 260, 274–75 (1977). To prevail on the issue of

---

[2] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

self-defense, a defendant must show all three of the following elements:

> (1) the defendant reasonably believed that he was preventing or terminating an unlawful interference with his person; (2) the defendant reasonably believed that force or threat thereof was necessary to prevent or terminate the interference; and (3) the defendant reasonably believed that the actual amount of force used was necessary to prevent or terminate the interference.

*State v. Camacho*, 176 Wis. 2d 860, 869, 501 N.W.2d 380, 383 (1993). The first element of the three-part test for self-defense has two components: a subjective component (what the defendant believed from the defendant's perspective) and an objective component (what a reasonable person, similarly situated, would have believed). *Id.* at 873, 501 N.W.2d at 384. Imperfect self-defense[3] also requires proof of the first element. *Id.* at 865, 501 N.W.2d at 381.

¶ 30. To be permitted to present evidence supportive of self-defense to the jury when the right to present such a defense is challenged, a defendant first must present the circuit court with a factual basis for raising the defense. *Id.* at 871, 501 N.W.2d at 383. Here, in making this threshold determination, the circuit court and the majority opinion focused on Harold's conduct on the morning he died, rather than also considering how the years of Harold's violence against Debra affected an objective belief that she had to act to

---

[3] The distinguishing factor between imperfect self-defense (intentional manslaughter) and self-defense is the reasonableness of a defendant's belief that deadly force was necessary. *State v. Mendoza*, 80 Wis. 2d 122, 156, 258 N.W.2d 260, 275 (1977).

defend herself that morning. Thereafter, they concluded that Debra did not meet the threshold of providing a factual basis to support her assertion of self-defense because, *as a matter of law,* she did not have a reasonable belief (objective component) that she was preventing Harold from harming or killing her (an unlawful interference with her person) when she shot him.

¶ 31. Although the circuit court did not specifically state that its conclusion rested on the objective component of the first element of *Camacho,* it could not have found that Debra lacked an actual belief (subjective component) because factual findings belong exclusively to the jury. However, if no jury could have found she reasonably believed that she was attempting to prevent harm to herself, that is a question of law which a circuit court can address. *State v. Seifert,* 155 Wis. 2d 53, 68, 454 N.W.2d 346, 352 (1990). However, unless the facts relevant to what constitutes a reasonable belief will permit only one conclusion, the reasonableness of a defendant's belief is a jury question. *Mendoza,* 80 Wis. 2d at 156, 258 N.W.2d at 275.

¶ 32. This appeal turns on whether the circuit court erroneously limited the facts that Debra could use to make a *prima facie* showing that her belief was reasonable and, by that limitation, erred in taking the question of reasonableness from the jury. I conclude that it did because Harold's threats and violence against Debra were repetitive events throughout their twenty-two-year marriage. They are highly relevant to Debra's state of mind on the morning of Harold's death and also to whether her belief that she was trying to prevent an imminent attack by him was a reasonable belief. Testimony of their previous encounters should have been admitted as Debra attempted to establish all

three *Camacho* elements before the jury. (*See* discussion below). Additionally, evidence of Harold's prior specific threats and acts of violence against Debra should not have been excluded under *McMorris*, because *McMorris* does not address specific threats and acts of violence by the *victim* against the *defendant*.

### 1. Victim's history of violence against the defendant.

¶ 33.    Wives who eventually kill the men who batter and threaten them have been the subject of many law review articles over recent years. Donna K. Coker, *Heat of Passion and Wife Killing: Men Who Batter, Men Who Kill,* 2 S. CAL. REV. REV. L. & WOMEN'S STUD. 71 (1992); Misty Murray, *People v. Humphrey: The New Rules of Self-defense for Battered Women Who Kill,* 27 SW. U. L. REV. 155 (1997); Rachel A. Van Cleave, *A Matter of Evidence or of Law? Battered Women Claiming Self-defense in California,* 5 UCLA WOMEN'S L.J. 217 (1994). No Wisconsin appellate case has discussed the admissibility of the threats and violence perpetrated against a domestic partner in the context of self-defense. However, numerous Wisconsin cases, which both precede and postdate *McMorris,* have addressed this evidence in the context of a heat-of-passion defense.

¶ 34.    Self-defense and the heat-of-passion defense differ in several respects, one of which is that self-defense requires an immediate act which triggered the defendant's response and a heat-of passion defense does not. However, there are significant similarities in the proof required for each defense. For example, a defendant in a heat-of-passion case must demonstrate what a reasonable defendant would have done given

the circumstances that resulted in the murder, and a defendant raising self-defense must show that she acted reasonably in taking immediate action against the victim. Both defenses rely heavily on the state of mind of the defendant at the time of the murder and whether the defendant held a reasonable belief that she had to act. Therefore, I conclude that the cases which explain how to evaluate whether to admit evidence of a defendant's reasonable belief in a heat-of-passion defense are controlling on the evaluation to be used in determining the admissibility of evidence relevant to a defendant's reasonable belief that she had to act to protect herself, when self-defense is raised.

¶ 35. To explain further, the heat-of-passion cases have concluded that when there is a history of violence between the victim and the defendant, a jury is to consider what a reasonable person would have believed under the circumstances from the perspective of a defendant who has been the subject of violence inflicted by the victim. *State v. Hoyt*, 21 Wis. 2d 284, 128 N.W.2d 645 (1964); *State v. Felton*, 110 Wis. 2d 485, 329 N.W.2d 161 (1983). In *Hoyt*, the court reviewed the murder of a husband by his wife, who admitted that she shot and killed him with his own gun. The wife was convicted of second-degree homicide, and the appeal turned on whether the circuit court erred in refusing to give a manslaughter instruction. In concluding that the circuit court did err, the supreme court's decision was driven by the victim's history of violence toward the defendant, which it concluded was relevant to the objective test that must be satisfied before sufficient provocation could be shown to warrant a manslaughter instruction. *Hoyt*, 21 Wis. 2d at 291, 128 N.W.2d at 648. The court reasoned that, in examining the defendant's conduct under the objective

189

standard in a case where there was a long history of violence between the victim and the defendant, it was important to examine more than the victim's actions in the last few minutes before the defendant responded. It instructed:

> If we look solely at the action of Mr. Hoyt in the last few minutes before the shooting, it seems clear that such actions would not be sufficient to produce the required degree of disturbance in an ordinarily constituted person not previously subjected to the treatment visited upon Mrs. Hoyt by her husband and disclosed by the record. On the other hand, it seems reasonable that the treatment to which Mrs. Hoyt had been subjected for a long period of time, and the public humiliation of her within the previous hour would have a cumulative effect upon any ordinary person so that the provocation just before the shooting would be greatly magnified.

*Id.* at 291, 128 N.W.2d at 649.

¶ 36. *Felton,* which postdates *McMorris,* also involved a heat-of-passion defense. It illustrates how the supreme court has consistently concluded that the history of violence by the defendant against the victim is relevant in evaluating the objective standard of what a reasonable person would have done under similar circumstances. As the court explained,

> [w]hile it is true that a defendant's background is not in general relevant to the objective test for heat of passion, the question is how an ordinary person faced with a similar provocation would react. The provocation can consist, as it did here, of a long history of abuse. It is proper in applying the objective test, therefore, to consider how other persons similarly situated with respect to that type, or that history, of provocation would react. . . .

190

Thus, this court has held that *the objective test may be satisfied by considering the situation of an ordinary person who is a battered spouse.*

*Felton*, 110 Wis. 2d at 509–10, 329 N.W.2d at 172–73 (emphasis added).

¶ 37.    Underlying *Hoyt* and *Felton* is the premise that we all react to others in light of our past experiences with them, to some degree. We have apprehension and fear based on what our interactions have taught us about the particular person with whom we are confronted. Put into the context of a criminal trial, this evidence is highly relevant to explaining why a reasonable person in the position of the defendant would have acted as she did. *Felton*, 110 Wis. 2d at 509–10, 329 N.W.2d at 172; *Hoyt*, 21 Wis. 2d at 291, 128 N.W.2d at 648. Furthermore, there is no rational basis for keeping this information from the jury. It is not character evidence to show a victim acted in conformity therewith, but it is highly relevant state-of-mind evidence that, unless a defendant's testimony is inherently incredible, should be admitted. Therefore, under *Hoyt* and *Felton*, I conclude that the circuit court erred in excluding evidence of Harold's prior specific threats and acts of violence against Debra.

¶ 38.    The next question is whether this ruling was prejudicial. *McLemore v. State*, 87 Wis. 2d 739, 757, 275 N.W.2d 692, 701 (1979). Generally, an error is harmless if there is no reasonable possibility that it contributed to the conviction. *State v. Dyess*, 124 Wis. 2d 525, 543, 370 N.W.2d 222, 231–32 (1985). A reasonable possibility is one that is sufficient to undermine confidence in the outcome of the proceeding. *State v. Patricia A.M.*, 176 Wis. 2d 542, 556, 500 N.W.2d 289, 295 (1993). The burden of proof is on the beneficiary of

the error to establish that the error was not prejudicial. *Dyess*, 124 Wis. 2d at 544 n.11, 370 N.W.2d at 232 n.11.

¶ 39.   At trial, in keeping with the circuit court's pretrial rulings which prevented Debra from testifying to Harold's specific threats and acts of violence toward her as well as his acts of violence toward others, Debra testified about what Harold did and said only on the morning of his death. She said that when she woke Harold he was lying on his side, on the side of the bed nearest the door, and that he rolled to his back to talk with her. When they began to discuss their teenage daughter's pregnancy, Harold became enraged and said, "I'm so sick of hearing about this. Maybe I should just take care of you guys and just get on with my life." Debra interpreted this as a threat to do her harm; however, the circuit court did not permit her to say why she believed that. Debra also testified that she backed into a corner, did not know where to go and was afraid when Harold's anger grew. However, again on the State's objection, she was not permitted to say why she was so afraid. She said that when Harold made his hands into fists and began to roll over on his side to get out of bed, she grabbed a loaded handgun that was under the edge of the bed where he was lying. She said she did so to get it before Harold did. She said when he made a move to sit up and come toward her, she shot him, and that she shot him a second time because he continued to try to get out of bed.

¶ 40.   A jury that was permitted to know why Debra interpreted Harold's statement as a threat to harm her and his movements on the bed as a precursor of an assault could have concluded that Debra's belief that she was acting to prevent Harold from harming her was a reasonable belief. However, this jury judged her solely on Harold's conduct that morning. The lim-

ited facts the court permitted the jury to hear had the effect of sanitizing Harold's actions because it took them out of the context of the twenty-two years of physical abuse and threats he had inflicted on Debra.[4] In so doing, it prejudiced Debra's constitutional right to raise a defense to the charges against her.[5]

### 2. *McMorris evidence.*

¶ 41. WIGMORE ON EVIDENCE sets forth the general rule pertaining to evidence of a victim's known acts and reputation for violence as:

> [T]he deceased's reputation can have a bona fide bearing on the defendant's apprehension only where there occurs, at the time of the affray, some conduct of the deceased which might otherwise be colorless, but when interpreted by his known character becomes apparently an act of aggression.

---

[4] Here, the circuit court seemed to conclude that Harold's acts were insufficient because he did not have a weapon, he was not specifically threatening to harm Debra at that moment, and he was not involved in perpetrating physical violence upon her at that time. However, the victims did not possess a weapon, nor were they perpetrating acts of physical violence or threatening to do so when they were killed in either *State v. Hoyt*, 21 Wis. 2d 284, 128 N.W.2d 645 (1964), or *State v. Felton*, 110 Wis. 2d 485, 329 N.W.2d 161 (1983). One was lying on a couch, and the other was asleep.

The circuit court also found that Debra could have run away from Harold, but Debra denied this. Therefore, it was a question of fact for the jury and not a proper basis for the circuit court's decision. *Mendoza*, 80 Wis. 2d at 156, 258 N.W.2d 260 at 275.

[5] *State v. Boykins*, 119 Wis. 2d 272, 279, 350 N.W.2d 710, 714 (Ct. App. 1984).

2 WIGMORE ON EVIDENCE, § 246 (rev'd. ed. 1979). *McMorris* addresses this type of evidence. As the supreme court stated, the issue it addressed was: "whether evidence of prior specific acts of violence by the victim of an assault, *against others than the defendant,* is admissible in a prosecution for injury by conduct regardless of life, when the defendant raises the issue of self-defense." *McMorris*, 58 Wis. 2d at 146, 205 N.W.2d at 560 (emphasis added). *McMorris* evidence is less probative of the victim's state of mind than the *Hoyt* and *Felton* evidence discussed above because a defendant who knows only of the victim's acts of violence against others would not have personally felt the effects of the defendant's violence. Therefore, her apprehension may be less immediate.

¶ 42.   However, evidence of the victim's prior specific acts of violence toward others, if the defendant had knowledge of them, is admissible after a factual basis for self-defense has been presented. *McMorris*, 58 Wis. 2d at 147, 205 N.W.2d at 560. The supreme court determined that "evidence of the turbulent and dangerous character or reputation of the deceased or the victim of the assault is relevant in determining whether the victim or the accused was the aggressor, and as bearing on the reasonableness of the defendant's apprehension of danger at the time of the incident." *Id.* at 149, 205 N.W.2d at 561–62. The court further explained that the defendant's knowledge of the past conduct of the victim "markedly affects what others may reasonably expect from him in the future." *Id.* at 151, 205 N.W.2d at 562. Therefore, a defendant ought to be allowed to prove every fact and circumstance known to that defendant and connected with the victim which was "fairly calculated to create an apprehension for [her] own safety." 2 WIGMORE ON EVIDENCE § 248 (rev'd. ed. 1979).

¶ 43.   Here, Debra had more than her own personal experience to inform her belief that Harold was a violent man. She knew that he had a significant history of violence against others. For example, he often bragged to Debra about fights he had with co-workers and the discipline he received for them. On one occasion, he threw a table when disciplined by a supervisor. He was required to go through an Employee Assistance Program for anger management in order to keep his job. He also punched a neighbor in the face and twisted the arm of a six-year-old child because the neighbor and the child irritated him. For a time, he took medication to control his temper; however, he had discontinued it.

¶ 44.   If all the testimony about Harold's prior acts and threats to Debra had been taken into account by the circuit court, as I have concluded they should have been under *Hoyt* and *Felton*, the application of *McMorris* would have permitted the admission of Harold's prior specific threats and acts of violence against others as well. Therefore, the circuit court also erred in precluding that testimony. *State v. Boykins*, 119 Wis. 2d 272, 350 N.W.2d 710 (Ct. App. 1984).

¶ 45.  · And finally, because a defendant is entitled to an instruction on any valid theory of defense the evidence supports if it is timely requested, Debra would have been entitled to an instruction on self-defense if the excluded evidence had been admitted. *State v. Coleman*, 199 Wis. 2d 174, 181, 544 N.W.2d 912, 915 (Ct. App. 1996). The denial of this requested instruction was also an error.

¶ 46.   Based on the errors that occurred at trial, I conclude Debra's constitutional right to raise a defense to the charges against her was violated and that she did not have a fair trial. Therefore, I would reverse her

conviction and remand for a new trial. Accordingly, I must respectfully dissent.