SHIRLEY S. ABRAHAMSON, C.J.
¶ 96. {dissenting). I agree with the majority opinion's implicit holding that evidence of the victim's reputation for violence is admissible on the issue of first aggressor when a defen *293 dant raises a self-defense claim, even when the defendant is unaware of the reputation.[1] Majority op., ¶¶ 47, 48, 79.
¶ 97. Character evidence of a victim’s violent disposition in the form of reputation evidence to prove *294 that the victim was the first aggressor in an affray is routinely accepted in the evidence literature as a paradigmatic admissible use of character evidence.[2]
¶ 98. I disagree, however, with the majority opinion's analysis that the defendant failed to lay a proper foundation[3] for the introduction of evidence of the victim's reputation and failed to follow through with a self-defense claim that the victim was the first aggressor. I also disagree with the majority opinion's harmless error analysis.
I
¶ 99. The majority opinion mistakenly concludes that the defendant failed to lay a proper foundation to introduce evidence of the victim's reputation and failed to present the issue that the victim was the first aggressor as part of his self-defense claim.
A
¶ 100. The majority opinion zeroes in on the motion papers to show that the defendant did not properly *295 raise the issue of the victim's reputation for violence to show that the victim was the first aggressor. Majority op., ¶¶ 73-75.
¶ 101. On the contrary, the motion clearly sought admission of evidence of the victim's violence in the form of reputation evidence. Here is the relevant portion of the defendant's motion carefully distinguishing between evidence of previous acts and evidence of the victim's reputation for violence and seeking admission of the latter:
3. Mr. Jackson was not acquainted with [the victim] and was not aware of these previous acts of violence at the time of the shooting, thus he is not able to admit evidence of these acts pursuant to doctrines set forth in McMorris v. State, 58 Wis. 2d 144 (1973) and State v. Daniels, 160 Wis. 2d 85 (1991), which permit the admission of specific violent acts of a victim previously known to a defendant in a self defense case. However, Wisconsin Statutes § 904.04(l)(b) provides for the admissibility of "evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor." Thus in a self defense case where the violent character of the deceased is an essential element of the defense, opinion and reputation testimony concerning the victim's reputation for violence is relevant and admissible and a trial court abuses its discretion in excluding such testimony. State v. Boykins, 119 Wis. 2d 272, 279 (Ct. App. 1984). Thus such reputation and opinion evidence is permitted to show that the victim acted in conformity with his character for violence (Wis. Stat. § 904.04(l)(b) and § 904.05(1).
*296 ¶ 102. Moreover, the defendant's motion papers do not represent the defendants' entire pretrial argument on the admission of evidence of the victim's reputation for violence.
¶ 103. In the pretrial hearing on the defendant's motion to introduce evidence of the victim's character in the form of prior acts or reputation and opinion testimony, the defendant attempted to lay a foundation for the proposed testimony about the victim's reputation. The result: the circuit court abruptly and completely precluded defense counsel from laying her foundation for testimony about the victim's reputation.
¶ 104. After the circuit court denied admission of the defendant's "other acts" evidence under Wis. Stat. § 904.04(2), defense counsel attempted to offer a foundation for evidence of the victim's reputation.
¶ 105. The pertinent part of the transcript is as follows:
[DEFENSE COUNSEL]: Okay. Then I guess, first of all, I understand the Court's ruling. Then I'm asking how the Court is going to rule then specifically— omitting specific facts but asking specifically I think that it is admissible for the defense to proffer opinion and reputation evidence of [the victim], the witness, assuming I can lay a foundation, I believe I can, that [the victim] is a violent person, the witness' opinion that he is a violent person and that [the victim] had a reputation for violence.
THE COURT: Mr. Williams?
[PROSECUTOR]: Judge, my understanding of character evidence, the admissible character evidence is it bears on credibility and I don't think that obviously would bear on credibility since the victim is not here to defend himself as to those accusations or opinions, so I don't think they're relevant under the character evidence statute.
*297 THE COURT: All right. I agree [with the prosecutor]. I don't believe that those matters would be relevant, so they would not be allowed.
[DEFENSE COUNSEL]: All right. Okay. So the court is denying the defense proffer opinion and reputation—
THE COURT: Character evidence, Number 2, I believe that is what it is entitled.
[DEFENSE COUNSEL]: Yes.
THE COURT: And that, in its entirety, is denied.
¶ 106. Defense counsel made a sufficient offer of proof. "The offer of proof need not be stated with complete precision or in unnecessary detail but it should state an evidentiary hypotheses underpinned by a sufficient statement of facts to warrant the conclusion or inference that the trier of fact is urged to adopt." State v. Dodson, 219 Wis. 2d 65, 73, 580 N.W.2d 181 (1998) (citing Milenkovic v. State, 86 Wis. 2d 272, 284, 272 N.W.2d 320 (Ct. App. 1978)).
¶ 107. In any event, despite defense counsel's statement that she could lay a foundation for the witness's testimony regarding the victim's reputation, the circuit court accepted the prosecutor's mistaken objection to the defendant's motion. The prosecutor erroneously stated the reputation was character evidence being offered for the credibility of the victim and not relevant.
¶ 108. The circuit court never allowed defense counsel to lay a better foundation, but instead simply agreed with the prosecutor's mistaken objection and ruled that the circuit court didn't "believe that those matters would be relevant" (emphasis added).
¶ 109. Instead of addressing defense counsel's attempt to offer evidence of the victim's reputation for violence, the circuit court addressed evidence of specific *298 acts, never coming to grips with the defendant's proposed reputation testimony. Indeed, the majority opinion concedes that the circuit court did not digest "that Jackson's argument had shifted from the admissibility of the specific acts to admissibility of the statement 'McCaleb had a reputation for violence.'" Majority op., ¶ 24.
¶ 110. The majority opinion asserts that the circuit court's preclusion of the defendant's attempt to lay a better foundation was not erroneous because "counsel did not object to the court's rulings, or ask for a specific ruling on reputation evidence," nor did defense counsel "clarify her request [or] request the opportunity to make a proffer." Majority op., ¶ 25.
¶ 111. Defense counsel did ask for a specific ruling on the reputation evidence, as the transcript clearly shows. Defense counsel obviously disagreed with the circuit court's ruling against her. A bill of exceptions listing objections is not needed in order to preserve an issue for appeal. Wis. Stat. § 805.11 explicitly bars the use of exceptions and bills of exception: "An objection is not necessary after a ruling or order is made. . . . Exceptions shall never be made. . . . Evidentiary objections are governed by [Wis. Stat.] § 901.03."[4]
¶ 112. The transcript and majority opinion demonstrate that the circuit court erred as a matter of law in not distinguishing between evidence of the victim's *299 reputation and evidence of the victim's prior or other acts.[5] The circuit court simply barred all evidence of the victim's character.
¶ 113. As the majority opinion properly notes, evidence of the victim's reputation for violence offered to demonstrate the identity of the first aggressor is relevant to a defendant's self-defense claim. Majority op., ¶ 79. Yet the circuit court erroneously ruled that reputation evidence is categorically not relevant in a self-defense case.
¶ 114. At the pretrial hearing, the circuit court certainly knew that the defendant was raising a self-defense claim. In fact, the prosecutor reminded the circuit court of the self-defense claim mere moments before the discussion regarding reputation evidence. In opposing the defendant's pretrial motion, the prosecutor stated, "[McMorris v. State, 58 Wis. 2d 144, 205 N.W.2d 559 (1973)] is very clear that the only time [evidence of prior acts of violence] can be used in a self-defense case is if the defendant knew it. . . ." (emphasis added).
¶ 115. In a self-defense claim, the identity of the first aggressor is significant. A defendant loses the privilege to assert a claim of self-defense if he or she was the first aggressor. See Wis. Stat. § 939.48(2); Banks v. State, 51 Wis. 2d 145, 186 N.W.2d 250 (1971) (holding that identity of first aggressor was an essential issue that required reversal in the interest of justice); Wayne R. LaFave, 2 Substantive Criminal Law § 10.4(e) (2d ed. 2003) ("It is generally said that one who is the aggressor in an encounter with another — i.e., one who brings *300 about the difficulty with the other — may not avail himself of the defense of self-defense.").
¶ 116. As the majority opinion additionally notes, " '[pjroperly framed, the reputation testimony can be elicited in less than a minute.1" Majority op., ¶ 72 (quoting 7 Daniel D. Blinka, Wisconsin Practice Series: Wisconsin Evidence § 405.2, at 226 (3d ed. 2008)).
¶ 117. Nevertheless, the circuit court did not give the defendant the minute. When defense counsel asked for clarification of the circuit court's pretrial evidentiary ruling, the circuit court stated simply that "[the character evidence], in its entirety, is denied."
¶ 118. When a defendant seeks to introduce evidence regarding a pertinent character trait of the victim, "[w]ide latitude should be granted to defendants in the use of the victim's character" as "circumstantial evidence of conduct." 7 Daniel D. Blinka, Wisconsin Practice Series: Wisconsin Evidence § 404.5 (3d ed. 2008).
¶ 119. The circuit court failed to grant the defendant any latitude, let alone "wide latitude," in presenting the victim's reputation for violence as part of the defense.
¶ 120. Rather than eliciting a full proffer from defense counsel, the circuit court based its evidentiary ruling on an erroneous understanding of law. The circuit court treated specific acts evidence and reputation evidence the same way. The circuit court erroneously denied the defendant's motion to admit evidence of the victim's reputation without allowing the defendant an opportunity to present a foundation for the reputation evidence.
¶ 121. Defense counsel unambiguously raised the victim's reputation to support the defendant's self-defense claim and was precluded from making a better *301 proffer of "opinion and reputation evidence of [the victim] . . . that [the victim] is a violent person, the witness' opinion that [the victim] is a violent person."
¶ 122. Defense counsel did all she could do to preserve the issue for appeal. She made a motion to include certain evidence and testimony and then attempted a proffer. She asked for clarification and was rebuffed.
¶ 123. The circuit court stopped defense counsel from making a better proffer and denied her motion in its entirety. The proffer cannot be viewed as insufficient when the circuit court precluded any proffer. The failure, if any, to lay a foundation lies with the circuit court, not with defense counsel.
B
¶ 124. In addition to misstating the substance and significance of the pretrial proceedings on the defendant's motion to admit evidence of the victim's reputation, the majority opinion repeatedly errs in stating that the defendant did not raise the issue of first aggressor at trial. Majority op., ¶¶ 28, 36, 52, 84.
¶ 125. The issue of who attacked whom first, especially in the present case where the victim was the larger, stronger person,[6] saturates the case as an element of the self-defense claim. The present case provides numerous instances where the defense raised the issue that the victim was the first aggressor at trial, even though the defense did not always use the words "first aggressor." Nothing in the law requires the defendant to use the specific two words "first aggressor" to raise this issue in a self-defense claim.
*302 ¶ 126. The record demonstrates that the issue of who was first aggressor was an essential part of the case for both parties before, during, and after the presentation of evidence.[7] The issue of the identity of the first aggressor was a consistent component of both parties' cases-in-chief.
¶ 127. In its opening statement, the defense stated that "[the victim and his friend] were starting an argument and were poised to start something violent with [the defendant] and were basically advancing as [the defendant] was retreating."
¶ 128. During direct and cross-examination of witnesses, the issue of the identity of the first aggressor was a consistent component of both parties' questioning.
¶ 129. The State, in its questioning of witnesses, asked about whether the victim or his companion had "take[n] back a hand or a fist and take[n] a swing or slap at [the witness]." In a sidebar with the circuit court regarding a witness's testimony, defense counsel noted that "here, the defense is clearly that the victim was the first aggressor, and my client acted in self-defense. .. . And this jury is making a determination as to who the aggressor was in this particular set of circumstances." During defense counsel's direct examination of a witness, defense counsel and the prosecutor disputed the use of the word "charging" to describe the victim's approach to the defendant.
¶ 130. In closing argument, the first aggressor argument was central to the defense and was disputed by the prosecution.
*303 ¶ 131. Defense counsel's closing argument restated the first aggressor argument:
Two bigger, stronger, younger men came up to the house. They got out of the car. They were aggressive. They were cursing. They were using the F word. [The victim and his companion] were advancing. [The defendants and the other witnesses] were retreating.
At some point [the victim] ran to the car, acted like he was getting something, came charging back. And that's when [the defendant] fired the shot.
¶ 132. The State disputed this claim in its own closing statement as follows:
Who's escalating the situation out here? You got one exchange of wording and [the defendant] feels that I need to go get my gun, get it out, rack it up and have it at my side. Who is the aggressor? [The defendant] certainly indicates that it was [the victim] and his friend.
But when you look at the facts, what you know, that's not the case. The aggressor is [the defendant] (emphasis added).
¶ 133. The question of who was the first aggressor was the heart of the self-defense claim and was an issue for both parties throughout every stage of the trial, from the defendant's pretrial motion, to the pretrial hearing on the defendant's motion, to the presentation of evidence at trial, to closing statements, and to the postconviction proceedings.
¶ 134. The majority opinion mistakenly states that the defendant's "first mention of introducing general 'reputation for violence' evidence to establish first aggressor was in his postconviction motion." Majority *304 op., ¶ 52. The majority opinion further mistakenly states that "[n] either the State nor Jackson specifically argued 'first aggressor' until after all the evidence had been presented at trial." Majority op., ¶ 28; see also majority op., ¶ 84. Based on the record before this court, the majority opinion has erred.
¶ 135. Although the majority opines that the fault lies with the defendant's failure to lay a foundation for evidence of the victim's reputation and the defendant's failure to rely on the defense that the victim was the first aggressor, I conclude on the basis of the record that defense counsel tried to lay a foundation, but the circuit court precluded defense counsel from doing so. Additionally, I conclude that the record shows that the defendant's self-defense claim rested on the premise that the victim was the first aggressor.
II
¶ 136. Once again, the court relies on harmless error to deny a criminal defendant relief.[8] A conclusion of harmless error requires a finding that there exists no *305 "reasonable probability" that the jury could have acquitted. See State v. Armstrong, 223 Wis. 2d 331, 368, 588 N.W.2d 606 (1999). If the reputation evidence were admitted, it may well have been a deciding factor here, particularly because the victim's aggression was at the core of the defendant's self-defense claim.
¶ 137. The majority opinion asserts that the reputation evidence would be only "modestly probative." Majority op., ¶ 91 (internal quotation marks omitted). Consequently, it determines that such evidence would be "fleeting and cumulative," majority op., ¶ 90, and could not have had a "reasonable probability" of changing the jury's verdict, majority op., ¶ 90 (citing State v. Armstrong, 223 Wis. 2d at 369).
¶ 138. Yet, the issue of first aggressor was clearly disputed by the parties, with extensive testimony on both sides. This is not a case where the facts or inferences are uncontroverted. Compare State v. Wenger, 225 Wis. 2d 495, 509-510, 593 N.W.2d 467 (1999) (holding that it was harmless error when the circuit court failed to include evidence of a victim's violent character because it would only corroborate extensive uncontroverted evidence); Brandt v. Mason, 256 Wis. 314, 318, 41 N.W.2d 272 (1950) (holding that it was harmless error to exclude evidence when the evidence would have simply corroborated an "undisputed" statement).
*306 ¶ 139. In contrast, this case was messy, with conflicting facts and inferences. Additional evidence of the victim's violent character might have made a difference in the outcome. Because the identity of the first aggressor goes to the substance of the defendant's self-defense claim and is not a collateral issue, even modestly probative evidence can have an impact on a jury's decision-making.
¶ 140. As the court noted in State v. Head, 2002 WI 99, 255 Wis. 2d 194, 648 N.W.2d 413, the exclusion of substantial evidence regarding a self-defense claim "went beyond harmless error to impair fundamentally the defendant's ability to present a defense." Head, 255 Wis. 2d 194, ¶ 138.
¶ 141. Our case law has long recognized that the erroneous exclusion of evidence that directly implicates a self-defense claim is not harmless. See State v. Nett, 50 Wis. 524, 7 N.W 344 (1880) (holding that reversal was required when the circuit court erred in excluding evidence of the victim's reputation where a defendant raised self-defense); Banks v. State, 51 Wis. 2d 145, 186 N.W.2d 250 (1971) (holding that reversal was required when the circuit court erred in excluding evidence that the defendant may have been the first aggressor, which would eliminate the privilege of self-defense); McMorris v. State, 58 Wis. 2d 144, 205 N.W.2d 559 (holding that reversal was required when the circuit court erred in excluding prior acts evidence for a self-defense claim); State v. Boykins, 119 Wis. 2d 272, 279-80, 350 N.W.2d 710 (Ct. App. 1984) (holding that reversal was required when the circuit court erred in excluding evidence of the victim's violent character when the "jury was denied the opportunity to evaluate [defendant's] asserted defense in light of all relevant evidence").
*307 ¶ 142. I see no reason to deviate from these cases in the instant case.
¶ 143. The court cannot read the jury's mind and has no way of knowing what effect the excluded reputation testimony would have had on the jury. We do know, contrary to the majority opinion at ¶ 79, that there was a genuine dispute about whether the victim was the first aggressor and the degree to which his aggression might have led to the defendant's fear for his own safety. We do know that the jury found the defendant guilty of the lowest possible included offense, second-degree reckless homicide.
¶ 144. On the basis of the facts we do know, I conclude that there was a reasonable probability that the jury could have been convinced by additional evidence that the victim was the first aggressor.
¶ 145. For the foregoing reasons, I dissent.

 See 1A Wigmore on Evidence, § 63 at 1365 (Peter Tillers ed., 1983) ("[T]he most frequent use of character evidence against a victim is when a violent crime is charged, to show that the victim was the first aggressor."); 1 McCormick on Evidence § 193 (Kenneth S. Broun ed., 7th ed. 2013) (noting that when "there is a dispute as to who was the first aggressor," "the accused can introduce evidence of the victim's character for turbulence and violence" limited to "reputation or opinion rather than to specific acts"); 22A Fed. Practice & Procedure: Evidence § 5237 (Kenneth W Graham, Jr. ed., 2d ed. 2013) (identifying" 'violent disposition' to prove that the victim was the aggressor in an affray" as a pertinent trait admissible under Federal Rule of Evidence 404(a)(2)).

 See majority op., ¶¶ 8, 49, 51, 71-77.

 Wisconsin Stat. § 901.03 provides in relevant part:
(1) Effect of erroneous ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected; and
(b) Offer of proof. In case the ruling is one excluding evidence, the substance of the evidence was made known to the judge by offer or was apparent from the context within which questions were asked.

 The circuit court similarly erred at the postconviction motion hearing. See majority op., ¶¶ 36-37.

 See majority op., ¶ 27.

 In contrast, the majority opinion asserts that "[n]either the State nor Jackson specifically argued 'first aggressor' until after all the evidence had been presented at trial." Majority op., ¶ 28.

 Scholars have noted the tendency of courts to find errors harmless or not based on whether the court believes the defendant is guilty. See, e.g., Harry T. Edwards, To Err Is Human, But Not Always Harmless: When Should Legal Error Be Tolerated?, 70 N.Y.U. L. Rev. 1167, 1187 (1995) ("As matters now stand, in many criminal cases an error is harmless so long as the appellate court remains convinced of the defendant's guilt; an error warrants reversal only where it raises doubts about the defendant's culpability.") (footnote omitted); Keith A. Findley & Michael S. Scott, The Multiple Dimensions of Tunnel Vision in Criminal Cases, 2006 Wis. L. Rev. 291, 349-50 (2006) (footnotes omitted):
Even when appellate courts do find constitutional or procedural errors at trial, they are disinclined to grant relief. Increasingly, the harmless error doctrine enables and encourages appellate courts to overlook trial error when they are satisfied that the defendant *305 was in fact guilty. The harmless error doctrine has long posed challenges of definition and application for courts. Increasingly, harmless error analysis is applied in a way that turns on an appellate court's assessment of a defendant's guilt, as opposed to whether the error might have had an effect on the verdict... . Under this doctrine, cognitive biases can contribute in powerful ways to a conclusion that the defendant was indeed guilty, and that the error was therefore harmless.