COURT OF APPEALS
DECISION
DATED AND FILED

December 27, 2019

Sheila T. Reiff
Clerk of Court of Appeals

NOTICE

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2018AP2136-CR**

Cir. Ct. No.  **2016CF3530**

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT I**

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

LUCIOUS EMMIT MASON,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County:  PEDRO COLON, Judge.  *Affirmed*.

Before Brash, P.J., Kessler and Dugan, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   Lucious Emmit Mason appeals from a judgment of conviction for one count of armed robbery with use of force, one count of false

imprisonment while using a dangerous weapon, and one count of substantial battery while using a dangerous weapon. *See* WIS. STAT. §§ 943.32(2), 939.63(1)(b), 940.30, and 940.19(2) (2015-16).[1] Mason also appeals from an order denying his motion for postconviction relief. Mason argues that he is entitled to a new trial because trial counsel provided ineffective assistance in four ways. We reject his arguments and affirm the judgment and order.

## BACKGROUND

¶2 The criminal charges in this case were the result of an incident involving Mason and S.H., who were friends and previously had a sexual relationship. The criminal complaint alleged that S.H. and her male friend, A.W., arranged to meet at a gas station and walk to a nearby bar. While S.H. and A.W. were at the gas station, Mason drove up to them, exited his vehicle, and attacked them with a tire iron.[2] Mason struck A.W. and took A.W.'s phone after it fell on the ground, which was the basis for the armed robbery charge.

¶3 The complaint alleges that S.H. told the police that, during the attack, she "ran to a bar named Miss Kitties to try and get help, but returned to the parking lot, as she was afraid [Mason] would kill [A.W.]." When she returned, Mason told her to get into his vehicle. S.H. did so, leaving A.W. behind.

¶4 The criminal complaint further alleged that Mason drove S.H. to another location. Mason "drag[ged] her from the vehicle" and began to hit her

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[2] Various witnesses described the instrument as a tire iron or crowbar. In this decision, we will refer to it as a tire iron.

with the tire iron. Concerned citizens, including a man named O.B., approached Mason while he was hitting S.H. Mason fled in his vehicle, and the citizens contacted the police. S.H. was transported to the hospital, where she was treated for serious injuries. Mason was charged with false imprisonment and substantial battery for his actions toward S.H.

¶5 After Mason was arrested in November 2016, he remained in jail until he was released on bail on March 8, 2017. The jury trial began on May 30, 2017. Before the jury was selected, the State put on the record the plea offer that had been extended to Mason. The State said:

> Your Honor, there was an offer of resolution that was sent on February 28th of 2017, that the State would move to dismiss and read in the Armed Robbery and Use of Force and False Imprisonment While Armed [u]pon a [plea] to the Substantial Battery while Armed which is Count 3.
>
> The State [would be] recommending 18 months [of] initial confinement and 24 months [of] extended supervision and the other standard conditions including restitution. That was rejected and this matter was set for trial. I just wanted to put that on the record today after talking with the victims and also going through with the officers what the relative strengths and weaknesses were of the State's case.
>
> I did indicate to counsel that based on the defendant not picking up any charges while this matter has proceeded, he has not tried to make contact with the victims, nor harass them in any way[,] based upon all of those factors and the age of his prior record, his last conviction was in 2002, I indicated that … on Count 3 the State would recommend the time be imposed and stayed and that he be placed on probation.
>
> That the State would be affirmatively asking for condition time based upon the nature of the victim's injuries, she had two broken bones. With the Defense free to argue as a matter of resolving this with the surety of a conviction and with the victims not having to go through the stressors of having to go to trial. They are both present

today. And counsel indicated to me that his client was rejecting that offer.

> I just wanted to make sure it's on the record so that Mr. Mason understands for certain that if he goes to trial he's going to trial on a 40-year felony[,] Armed Robbery Use of Force[, with a] maximum penalty of 40 years[;] False Imprisonment While Armed which has a maximum penalty of 11 years because of the enhancer[;] and the Substantial Battery While Armed which has a maximum penalty of 7 and a half years. And that those can be run consecutively to each other if he is convicted of all three charges just so that it's clear to him.

¶6 The trial court asked the State to repeat the current offer. The State reiterated that it would recommend that the trial court impose a sentence of eighteen months of initial confinement and twenty-four months of extended supervision, stay the sentence, put Mason on probation, and order jail time as a condition of probation.

¶7 The trial court then turned to trial counsel, who said: "That is correct. And I think my client is arguing for his five months already for initial confinement. He's previously been in custody for five months on this matter." Subsequently, the parties and the trial court spoke off the record, after which trial counsel indicated that Mason wanted new counsel. The trial court denied the request, and there was no additional discussion about the plea offer.

¶8 After lunch, the parties returned to the courtroom. The State noted that a citizen witness it had hoped to call, O.B., had been located. The State said:

> The witness, [O.B.], that was not available this morning has been located now and is on call…. So I just wanted the defendant to be aware of that as well. That there was an additional witness that was already on our witness list and we had not located him as of this morning. We do now have him located as of this afternoon. And if that changes the weighing of the State's offer that was placed on the record this morning the State would still keep that open if that would resolve matters.

4

The trial court gave the parties an opportunity to speak privately. When the case was recalled, there was no indication that Mason was interested in accepting the plea. Instead, the trial court and the parties discussed Mason's request for new counsel, which the trial court again denied.

¶9 At trial, S.H., A.W., and O.B. each testified that Mason was the man who attacked S.H. Mason did not testify.

¶10 In his closing argument, trial counsel argued that S.H.'s memory was faulty and that A.W.'s identification of Mason was flawed. Trial counsel acknowledged that S.H. was beaten, but he said that "doesn't mean that Mr. Mason is the individual" who beat her.

¶11 As part of his argument that S.H.'s memory was unreliable, trial counsel referenced the fact that S.H. testified that she sought assistance at the bar she and A.W. had planned to visit—the Wilson Club—but originally told investigators she sought help at a bar called Miss Kitties.[3] Trial counsel said:

> We have a woman who everyone says is delirious, is in and out of consciousness, is unsure even [two days after the incident]. She gives two different locations, first Mr. Wilson's and then a Ms. Kitty's. I don't know where Miss Kitties is, okay?
>
> That's relevant to deciding his guilt, okay?

¶12 In response to trial counsel's argument about S.H.'s reference to different bars, the State argued:

> Now, if the biggest hole we can poke in this is that at the time [S.H.] said it was Ms. Kitty's Bar and now she's

---

[3] The transcripts reflect several variations of the names of the two bars, including Wilson Club, Mr. Wilson's, Miss Kitties, and Ms. Kitty's.

5

> saying it's Wilson's Bar, that's not an element of the crime. I don't know if the bar name has changed. I don't know if there's two bars next to each other. I'm not familiar with either, and that's not an element of the crime.
>
> There's no dispute that she ran across [the street] to a bar trying to get help. [A.W.] says it and she says it.

¶13    The jury found Mason guilty of all charges. Prior to sentencing, trial counsel moved to withdraw, and the trial court granted the motion. Represented by new trial counsel, Mason was sentenced to a total of eleven and one-half years of initial confinement and seven years of extended supervision.

¶14    Represented by postconviction counsel, Mason filed a motion for postconviction relief. The motion alleged that Mason's first trial counsel, who represented him from the preliminary hearing through the trial, provided ineffective assistance by failing to: "(1) communicate effectively with Mr. Mason regarding the most basic issues of the case, including the State's plea offer; (2) cross-examine the complaining witnesses regarding inconsistencies about where the alleged criminal conduct occurred; and (3) adequately investigate the witnesses that testified against Mr. Mason."

¶15    After receiving a response from the State and a reply from Mason, the trial court denied Mason's postconviction motion without a hearing except for one issue. The trial court scheduled a *Machner* hearing for "the issue pertaining to trial counsel's communication with [Mason] concerning the plea offer made by the State prior to trial and the offer made in court on the first day of trial." *See State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

¶16    At the *Machner* hearing, trial counsel testified that on the first day of the trial, after the State stated the plea offer on the record, trial counsel discussed the offer with Mason over the lunch break. Trial counsel testified:

6

> One of his friends was there and he asked him, why didn't he want to take the deal. So it was discussed and he had two hours to think about that. And at one point we're in the hall and he's by the window ledges and again he's slamming his fist on the ledge screaming at me saying, I don't want no f-nn deal. Don't come back to me with no f-nn deal.

¶17 In contrast, Mason testified that he "[n]ever discussed any plea with" trial counsel. Mason said that he "remember[s] an offer was said" on the record on the first day of the trial, but he said that he "wasn't paying attention" because he was arguing with trial counsel. Mason claimed he "didn't understand what the plea was due to the conflict." When asked whether he would have accepted the plea deal if he had heard about it, Mason answered: "Maybe so probably so, yes."

¶18 At the conclusion of the hearing, the trial court denied the remainder of Mason's postconviction motion, finding that trial counsel had not performed deficiently. The trial court accepted trial counsel's testimony that he discussed with Mason "the strength of the case" and "went over the testimony that we ultimately heard." The trial court also noted that the State reviewed the plea offer on the record twice. The trial court found that Mason "understood what the offer" was and "knowingly" rejected it. This appeal follows.

## DISCUSSION

¶19 On appeal, Mason continues to argue that trial counsel provided ineffective assistance in numerous ways. We address each argument in turn. For reasons detailed below, we conclude that Mason is not entitled to relief.

¶20 We begin our analysis with the relevant legal standards. To establish ineffective assistance, a defendant must show both that counsel's performance was deficient and that he or she was prejudiced by the deficient

performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). If we conclude that a defendant has failed to demonstrate one of the prongs, we need not address the other. *See id.* at 697. "To prove constitutional deficiency, the defendant must establish that counsel's conduct falls below an objective standard of reasonableness." *State v. Love*, 2005 WI 116, ¶30, 284 Wis. 2d 111, 700 N.W.2d 62. "To prove constitutional prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (citations and internal quotation marks omitted).

¶21 A claim of ineffective assistance of counsel presents a mixed question of law and fact. *State v. Carter*, 2010 WI 40, ¶19, 324 Wis. 2d 640, 782 N.W.2d 695. We will uphold the trial court's findings of fact unless they are clearly erroneous, but "the ultimate determination of whether counsel's assistance was ineffective is a question of law, which we review *de novo*." *See id.* (italics added). In addition, we will not disturb the postconviction court's credibility determinations. *See State v. Turner*, 114 Wis. 2d 544, 550, 339 N.W.2d 134 (Ct. App. 1983) (recognizing that the appellate court defers to the trial court's determinations of witness credibility).

¶22 A defendant is not automatically entitled to an evidentiary hearing on his or her postconviction motion. *See State v. Bentley*, 201 Wis. 2d 303, 310, 548 N.W.2d 50 (1996). The trial court must hold an evidentiary hearing only if the defendant alleges "sufficient material facts that, if true, would entitle the defendant to relief," which is a question of law that we review *de novo*. *See State v. Allen*, 2004 WI 106, ¶¶9, 14, 274 Wis. 2d 568, 682 N.W.2d 433. To entitle the defendant to a hearing, the motion must "allege the five 'w's' and one 'h'; that is,

who, what, where, when, why, and how" as to the defendant's claims. *Id.*, ¶23. If the motion does not set forth sufficient facts or presents only conclusory allegations, "or if the record conclusively demonstrates that the defendant is not entitled to relief," the trial court may grant or deny a hearing at its discretion. *Id.*, ¶9.

¶23    We turn to the two arguments that the trial court denied without a hearing. First, the postconviction motion asserted that trial counsel performed deficiently by failing to cross-examine S.H. and A.W. about where the crimes occurred. Mason noted that S.H. testified that during the assault she ran to a bar called "Wilson's Club," which Mason alleged is located about one-half mile from the gas station. Mason argued: "It is … highly unlikely that [S.H.] ran nearly a mile to Wilson's Club and back again, while [A.W.] remained at the gas station." Mason asserted that trial counsel's performance was deficient because "[i]n a case w[h]ere the complaining witnesses' credibility, and their ability to accurately perceive and recount events, especially as it bore on their identification of Mr. Mason, was of such importance, it was incumbent on counsel to point out inconsistencies in their accounts." Mason concluded: "The evidence … would have highlighted a material discrepancy between the witnesses' accounts of where they were, and what they did, with the actual physical distances involved."

¶24    The trial court concluded that Mason was not entitled to a hearing because he had not demonstrated prejudice. *See **Strickland***, 466 U.S. at 697. The trial court noted that S.H. had memory problems that were explored at the jury trial, and that the State had relied on testimony not just from S.H., but also from A.W. and O.B. to identify Mason as the perpetrator. The trial court concluded: "Cross[-]examination of such inconsistencies under the above circumstances would not have made a singular difference in [the] outcome of the trial."

9

¶25     We agree with the trial court. Mason's motion did not demonstrate that he was prejudiced by the lack of additional cross-examination about the location where the first assault took place. Mason's defense at trial was not to deny that S.H. and A.W. were attacked, but to assert that he was not the perpetrator. Trial counsel attempted to discredit S.H.'s identification of Mason by pointing out her confusion and the fact that she had not consistently identified the bar where she sought assistance. The jury, nonetheless, found Mason guilty. We are not persuaded by Mason's suggestion that if the jury had heard additional testimony about the distance between certain bars and the gas station, "there is a reasonable probability that … the result of the proceeding would have been different." *See Love*, 284 Wis. 2d 111, ¶30 (citations and internal quotation marks omitted). In summary, we agree with the trial court that Mason was not entitled to an evidentiary hearing on this issue. The record "conclusively demonstrate[d]" that Mason "[was] not entitled to relief." *See Allen*, 274 Wis. 2d 568, ¶9.

¶26     The second allegation of deficient performance that the trial court denied without a hearing was that trial counsel failed to adequately investigate S.H., A.W., and O.B. The postconviction motion said there was "no indication that [trial] counsel attempted to interview" those witnesses prior to trial. Mason alleged that trial counsel should have reviewed S.H.'s medical history and had an investigator interview her "in order to independently assess her credibility and ability to accurately recall information." Mason offered no explanation of what might have been revealed if trial counsel had investigated A.W. and O.B.

¶27     The trial court rejected this argument, without a hearing, on grounds that Mason's allegations were "conclusory." We agree with the trial court. Mason's suggestion that S.H.'s medical records would reveal information that would have affected the jury's analysis was conclusory. He also did not address

the fact that the jury already heard testimony from S.H. that she did not remember everything that occurred during the assaults. Further, Mason did not explain what additional information he believes would have been discovered by interviewing A.W. and O.B. We conclude that Mason's arguments were conclusory; he failed to adequately allege both deficiency and prejudice. Therefore, he was not entitled to an evidentiary hearing. *See* ***id.***

¶28 Next, we consider the two interrelated communication issues that were addressed at the ***Machner*** hearing: trial counsel's alleged failure to communicate with Mason about the plea offer and his alleged failure to communicate with Mason in general. The trial court heard testimony about the plea offer, trial counsel's interactions with Mason during the trial, and Mason's attempts to contact trial counsel in the months leading up to the trial.[4] However, the parties' closing arguments focused primarily on the plea offer. Thus, the trial court made specific findings about the plea offer, but not about general communication between Mason and trial counsel.

¶29 On appeal, Mason separates his argument about trial counsel's communications concerning the plea agreement from his argument that trial counsel failed to effectively communicate "at critical stages of the proceedings," which we interpret to be a challenge to trial counsel's general communication with Mason. (Bolding and some capitalization omitted.) Accordingly, we will address them separately.

---

[4] Trial counsel testified that when Mason was released on bail, trial counsel told Mason to give him a call when he got a phone. Trial counsel testified: "I gave him my information. He never got back to me until the day of trial." Mason testified that he telephoned trial counsel two or three times but did not reach him. Mason acknowledged that he did not leave a voicemail for trial counsel, explaining: "I didn't leave a voicemail because I wanted to talk to him in person."

¶30    We defer to the trial court's credibility determinations and findings of fact concerning trial counsel's communication about the plea agreement. *See Carter*, 324 Wis. 2d 640, ¶19; *Turner*, 114 Wis. 2d at 550. Based on those determinations, which are not clearly erroneous, trial counsel did not perform deficiently. Trial counsel communicated the plea offer to Mason and he rejected it. Therefore, Mason was not entitled to relief based on those allegations. *See Strickland*, 466 U.S. at 687.

¶31    Finally, we consider Mason's allegation that trial counsel did not effectively communicate in general. Mason complains that trial counsel did not meet with him more often, send him correspondence, or provide him with a copy of the discovery. He also notes that, at one point during the trial, the trial court observed that communication between Mason and trial counsel was "tense." Mason argues that these facts demonstrate that trial counsel performed deficiently.

¶32    While Mason has addressed why he believes trial counsel's general communication with him was deficient, his opening brief does not address prejudice, which the State points out in its response. Mason finally addresses prejudice in his reply brief, arguing: "[T]he failure to communicate in general was so fundamental as to prejudice him throughout the proceedings…. [It] amounted to a constructive denial of counsel, and … prejudice should be presumed." *See Strickland*, 466 U.S. at 692 ("Actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice.").

¶33    Mason's assertion that prejudice from trial counsel's general communication failures can be legally presumed is an argument raised for the first time on appeal. On that basis alone we can reject it. *See State v. Schulpius*, 2006

WI 1, ¶26, 287 Wis. 2d 44, 707 N.W.2d 495 (holding that the court of appeals generally will not review an issue raised for the first time on appeal).

¶34 Mason's argument also fails because he has not adequately demonstrated that trial counsel's alleged deficiencies—such as failing to meet more often with Mason and get along with him better—are the types of deficiencies for which prejudice can be presumed under *Strickland*. *See State v. Erickson*, 227 Wis. 2d 758, 770, 596 N.W.2d 749 (1999) ("To be sure, there are instances where a court will presume prejudice; those instances, however, are rare."). Mason's belated argument is conclusory and unpersuasive, and we will not develop an argument for him. *See Industrial Risk Insurers v. American Eng'g Testing, Inc.*, 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82 (stating that this court will not abandon its neutrality to develop arguments for a litigant); *Vesely v. Security First Nat'l Bank of Sheboygan Trust Dep't*, 128 Wis. 2d 246, 255 n.5, 381 N.W.2d 593 (Ct. App. 1985) (stating that we do not decide inadequately briefed arguments).

¶35 We conclude that Mason has not demonstrated prejudice with respect to his general communication claim. Therefore, we need not discuss the reasons he believes trial counsel's communication with him during "critical stages" was deficient. *See Strickland*, 466 U.S. at 697. Mason is not entitled to relief.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)(5).